Cook *v.* State.

(*Jackson.*    June  6,  1891.)

1. ELECTIONS.    *The "Dortch Law" constitutional.    Educational qualification.*

Those provisions of the " Dortch Law," Acts 1890, Ch. 24 (Ex. Sess.), which make it a misdemeanor for any person to remove ballots from the voting place, or to aid a voter in the selection or marking of his ticket, and require all voters, including illiterates, to select and mark their own tickets, with such assistance only as the election officers may lawfully afford, are valid and constitutional.    These provisions do not require such educational qualification on the part of voters as render them obnoxious to the State Constitution.    They are a just and reasonable exercise of the legislative " power to enact laws to secure the freedom of elections and the purity of the ballot-box." They do not impose oppressive or impossible conditions upon the exercise of the elective franchise.

Constitution construed: Art. IV., Sec. 1.

Act construed: Acts 1890, Ch. 24 (Ex. Sess.).

2. SAME.    *Same.    Class legislation.*

The " Dortch Law," Acts 1890, Ch. 24 (Ex. Sess.), is not unconstitutional, as class legislation, by reason of the fact that it is confined in its operation to counties having seventy thousand inhabitants and to cities having nine thousand inhabitants computed by the Federal census of 1880, or that should have such numbers of inhabitants by any subsequent Federal census.    All counties and cities in the State may, when the required conditions occur, have the benefits of the Act.

Constitution construed: Art. XI., Sec. 11.

Act construed: Acts 1890, Ch. 24 (Ex. Sess.).

3. SAME.    *Same.    Appointment of commissioners of registration.*

Commissioners of registration are not county officers, in such sense that the legislative provision conferring upon the Governor the power to appoint them violates the constitutional provision that " no county

offic̸  ted by the Legislature, shall be filled otherwise than by
the /  e or the County Court."
Consti..  on construed: Art. XI., Sec. 17.

Case cited and approved: McCraw v. Harralson, 4 Cold., 42.

4. SAME. *Same.*

The "Dortch Law," Acts 1890, Ch. 24 (Ex. Sess.), does not violate the fourteenth amendment to the Federal Constitution.

Constitution construed: Fourteenth amendment, U. S. Constitution.

FROM SHELBY.

Appeal in error from Criminal Court of Shelby County. J. J. DUBOSE, J.

L. B. EATON for Cook.

Attorney-general PICKLE for State.

TURNEY, Ch. J. Plaintiff in error was indicted for removing ballots, aiding electors in marking their ballots, instructing them how to vote, etc.; was convicted, and has appealed. His defense is the unconstitutionality of the Act of the Legislature, passed March 11, 1890, Ch. 24, entitled "An Act to provide more stringent regulations for securing the purity of elections in this State, and applicable to counties having a population of over seventy thousand and cities of over nine thousand

inhabitants, computed by the census of 1880, or may hereafter have such numbers by any subsequent Federal census," etc.

The attack is mainly on the ground that the Act violates Art. IV., Sec. 1, and Art. XI., Sec. 17, of the Constitution, it being argued that under the first ordinance there can be no restriction or qualification of the right to vote except the condition of the payment of a poll-tax, and that the law in question requires an educational qualification, in that it imposes upon the elector the duty of being able to select for himself a ballot, and mark for himself the name or names of the candidates for whom he desires to vote.

If these requirements violate the letter or spirit of Art. IV., Sec. 1, the law is a nullity. To determine this the section must be construed as a whole. The provisions that every male citizen of the age of twenty-one, etc., shall be entitled to vote; that there shall be no qualification attached to the right of suffrage, except that each voter shall have paid his poll-tax; that the General Assembly may enact laws to secure the freedom of elections and the purity of the ballot-box, must consist together.

The proposition that the statute before us adds to these qualifications that of education, is comprehensive, and involves more or less refinement of the term "educational."

Education is a broad term, and includes all knowledge if we take it in its full and not its

legal or popular sense. Whatever we learn by observation, by conversation, or by other means away from what has been implanted by nature is education. In fact, every thing not known intuitively and instinctively is education, but not in the sense we must understand the objection to this Act.

The Convention of 1870, in a spirit of conservatism appropriate to the times, prepared and presented the Constitution which was adopted by the people. That Constitution gives, as we have seen, the elective franchise with the qualifications named

It is certain that at that time there was much misgiving and apprehension as to the future of the State, and all felt the necessity of such constitutional provisions as would, if rightly construed, preserve in its integrity a republican form of government for the State.

It is evident the framers of the Constitution did not intend, by its conferrence of the right to vote, to ignore an educational qualification in all respects. It fixes the age at twenty-one, with a citizenship of the United States, and twelve months residence in the State, and of six months in the county. The age was fixed as one of maturity, at which period the law presumes the proposed voter to have sufficiently ripened in mental power to determine for himself the soundness or unsoundness of the measures upon which he is called to vote. Citizenship of the United States is a prerequisite, as fixing such interest in the welfare of the Federal Government as supposes a study of

and acquaintance with its governmental policy, and so of residence in the State and county, as well as to become acquainted with the character and capacity of the men who might ask office. These restrictions are terms of educational probation.

A foreigner, if in the United States and in any State and county for any number of years, however long, before becoming naturalized, must still reside in the county six months after naturalization before he is entitled to vote. 5 Sneed, 486.

A native citizen or resident of any county cannot remove to another, however short the distance of removal, and be entitled to vote in the latter until he shall have been a resident citizen thereof for the period of six months. All this is to acquaint and identify him with the wants and interests of the people with whom he proposes to live.

It is, from these clearly-defined constitutional requirements, manifest the framers of the Constitution did not contemplate an indiscriminate and ignorant exercise of the elective franchise, but guarded against it as far as they could then see it. Having done this, they naturally concluded the future might develop mischiefs that would not fall within the defined guards, and, to make sure of protection in such emergencies, they granted to the General Assembly " the power to enact laws to secure the freedom of elections and the purity of the ballot-box."

The purpose of the law before us is to require the voter to cast his own ballot, to do away, as

far as possible, with the illegal practice of voting oftener than once, existing in some quarters of the State, and to defeat bribery, duress, and corruption at the polls.

The law is plain and simple in its provisions. Every voter, however illiterate, can always find a friend to himself, or some one candidate, who will read and explain the law and the manner of its observance. Ballots and cards of instruction are always at hand. The names of candidates are printed, and with little effort the unlettered voter can soon become as well acquainted with the printed name of his candidate as with his face, and with easy readiness place his cross (×) opposite that name and fold his ticket as required.

The argument of inconvenience. is as nothing compared to the rights intended to be protected by that inconvenience, and the pulling, pushing, and bribing of ignorant men before and at elections. The inconvenience to a part of the community must yield to the good of the whole.

The law presumes the voter expresses the choice of his judgment by his ballot. No man, learned or unlearned, can have a choice without being first informed. If, then, information is required as to any part of the right and duty of voting, why not as well to all?

The Constitution surrounded the right of suffrage with some inconveniences, and authorized the Legislature to attach more. In the exercise of its power, the Legislature must be reasonable and just,

not imposing impossible or oppressive conditions, else its legislation will be void.

That the law applies only to counties of 70,000 and cities of 9,000 inhabitants, does not impeach its validity. All counties and cities that have or may hereafter have the designated population are embraced. It applies to all parts of the State, and each city and county may come within its provisions. This principle has often been applied by this Court, holding that similar legislation was not class.

The statute in nowise infracts the fourteenth amendment to the Constitution of the United States. Article IV., Section 4, of that instrument guarantees to every State in the Union a republican form of government. No government can be republican that fails to secure the purity of elections. By these terms of the United States Constitution, the Legislature of each State has the organic authority for the passage of such laws as will secure that purity, and it cannot be urged that such laws abridge the privileges or immunities of the citizen. In the matter of voting, the only privilege one has is to cast his ballot fairly, and not interfere with others by fraud, force, or duress. His privileges are personal.

Whatever may be necessary to carry out the sections of the two Constitutions cited, is within the power of the Legislature for adoption. It may employ every legislative means, however vigorous, to accomplish the ends contemplated by the framers of the Constitutions. The Legislatures are, as a

rule, the judges of the means to be adopted, and their necessity. The power to regulate and reform is theirs. They are presumed to know the condition and wants of the State.

The Commissioners and Registrars named in the Act are not county officers in contemplation of Art. XI., Sec. 17, of the Constitution, which ordains: "No county office, created by the Legislature, shall be filled otherwise than by the people or the County Court." They merely constitute the machinery by which the law is operated. They are more in the nature of judges or inspectors of elections. In speaking of the statute requiring the County Court to make appointments of judges of election, Judge Milligan said: "The provision of the statute, we apprehend, is merely directory, and whether the appointment is made by the County Court, by the Sheriff or Coroner, as the case may be, by and with the advice of three Justices, or an equal or less number of Justices or respectable freeholders, the result is the same. The object of the statute is to secure just and competent inspectors, and, when that end is attained without prejudice to the contestant, it constitutes no ground for declaring the election void. Were the law held otherwise, and a strict conformity in all respects to its letter exacted of every officer holding popular elections, it would result in interminable contests about unsubstantial formalities, and end in a practical denial of the right of the people to choose their own officers." 4 Cold., 42.

Cook *v.* State.

The officers recognized by this Act, being so nearly akin to and closely associated with those of judges and inspectors of elections, the holding of Judge Milligan applies with full force. Such officers have three sources of appointment and none of election, and therefore were not county officers in the sense of the provision of the Constitution. We so hold as to the officers mentioned by this Act.

The judgment of the Criminal Court, holding the Act to be constitutional, is affirmed.