## MEMPHIS *v.* AMERICAN EXPRESS CO.

### (*Jackson.* April 19, 1899.)

1. TAXATION. *Repeal of power of municipality to tax a privilege.*

   A provision in a general revenue law imposing on a business or occupation—*e. g.,* express companies—a specific privilege tax for State purposes, to be paid to the Comptroller "in lieu of all other taxes except *ad valorem* tax," has the effect to exempt such business or occupation from taxation as a privilege by municipal corporations, and to repeal any existing provision by statute or ordinance imposing such tax on behalf of the municipality. (*Post, pp. 339–341.*)

   Acts construed: Acts 1897, Ch. 2, Sec. 6; Acts 1879, Ch. 84, Sec. 7; Acts 1893, Ch. 84, Secs. 4, 5.

   Cases cited: Hunter *v.* Memphis, 93 Tenn., 573; Memphis *v.* Bing, 94 Tenn., 645; Railroad *v.* Harris, 99 Tenn., 685; Reelfoot Lake, etc., Dist. *v.* Dawson, 97 Tenn., 151.

2. STATUTES. *Repeal.*

   The general and usual clause repealing all laws in conflict with the particular statute has no effect whatever. · (*Post, p. 341.*)

   Constitution construed: Art. II., Sec. 17.

   Act construed: Acts 1897, Ch. 2.

   Case cited: State *v.* Yardley, 95 Tenn., 548.

3. SAME. *Same.*

   Under the title "An Act to provide revenue for the State of Tennessee and the counties thereof," it is competent for the Legislature to enact that privilege taxes on certain occupations shall be laid for State purposes only, and thereby repeal, by implication, existing laws or ordinances imposing privilege taxes on the same occupations for municipal purposes. (*Post, pp. 341, 342.*)

   Constitution construed: Art. II., Sec. 17.

   Act construed: Acts 1897, Ch. 2.

   Case cited and approved: State *v.* Yardley, 95 Tenn., 553.

   Cited and distinguished: Knoxville *v.* Lewis, 12 Lea, 180; Burke *v.* Memphis, 94 Tenn., 692.

4. SAME.  *Same.*

  A statute purporting to be, and manifestly intended as, a revenue measure will not be treated as an exercise of police power to rescue it from implied repeal by a general revenue Act, even if it does incidentally accomplish the ends of a police measure. (*Post*, p. *343.*)

5. EXPRESS COMPANY.  *Taxation of their wagons.*

  An express company that pays a privilege tax on its business as a unit will not be held liable, in the absence of a clearly expressed legislative intent to impose further burden, for a tax on vehicles imposed by another clause of the same statute. (*Post*, pp. *343, 344.*)

  Case cited: Bell *v.* Watson, 3 Lea, 328.

---

### FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby County.  L. H. ESTES, J.

JNO. H. WATKINS for Memphis.

FRANCIS FENTRESS for Express Co.

CALDWELL, J.  The American Express Company brought this suit against the city of Memphis to recover the sum of $57, paid under protest by the company to the city as a license tax for the year 1898 on the company's eight wagons run over the streets of the city in gathering up and delivering express packages.  The Circuit Judge, who tried the case without the intervention of a jury, rendered judgment for the company, and the city appealed in error.

The contention of the company was and is that
the legislation under which the license tax was im--
posed had been repealed by the general revenue bill
passed in the year 1897, but the city denied below,
and denies here, that such was the effect of this
subsequent legislation. The solution of this disputed
question will decide the case.

By Chapter 10 of the Acts of . 1879 the charter
of the city of Memphis was abolished, and under
the provisions of Chapter 11 of the Acts of the
same year a taxing district was established for the
same territory. The city of Memphis, like other
municipalities in the State, had been accustomed to
levy its own taxes under the authority of general
State laws, but the Legislature of the State, by
bills framed and passed for that purpose, levied
taxes for the taxing district.

Section 7 of Chap. 84 of the Acts of 1879,
enumerated, in as many subsections, fifty-eight "tax-
able privileges" in the taxing district, and "fixed"
the amount of the tax on each. Subsections 20,
21, and 22 related to carts, wagons, drays, and
certain other vehicles, and prescribed the exact tax to
be paid for the privilege of using the same in the
taxing district. These three subsections of that
Act were amended by Sec. 1, Chap. 104, of the
Acts of 1889, so as to provide that the tax to be
annually paid for the use of such vehicles in the
taxing district, should be $1, $2, or $3 (accord-
ing to prescribed classes), if the tire should be as

much as $3\frac{1}{2}$ inches in width, and $5, $7.50, or, $10 each for the same classes, respectively, if the tire should be less than $3\frac{1}{2}$ inches in width. It was under and by virtue of this provision that the tax involved in this case was demanded and received by the city.

In 1893 the Legislature of the State conferred upon the city of Memphis, as successor to the taxing district, ample taxing power, including the benefit of all laws imposing privilege taxes in favor of the taxing district. Acts 1893, Chap. 84, Secs. 4 and 5; *Hunter* v. *Memphis*, 93 Tenn., 573.

By that Act "the city was rehabilitated with corporate autonomy, and authorized to exercise the taxing power, as an arm of the State government." *Memphis* v. *Bing*, 94 Tenn., 645. Thus the city became authorized to collect such privilege taxes under the Act of 1889 as the taxing district would have been authorized to collect if its existence had been continued; and, as a consequence, the city was entitled to collect the tax here in question, unless the aforesaid provision of that Act was repealed before the accrual of the tax.

Section 6 of the general revenue law of 1897 is in these words: "The following corporations shall pay directly to the Comptroller of the State the following taxes on the following privileges: Express companies (in lieu of all other taxes except ad valorem tax), if the lines are less than 100 miles, . . . per annum, $500; if lines are more than

100 miles, . . . per annum, $2,000." Acts 1897, Chap. 2, Sec. 6, pp. 74, 75.

By this provision a privilege tax is laid in favor of the State on all express companies, and that tax is declared to be "in lieu of all other" privilege taxes. The words "in lieu of all other" privilege taxes show an indisputable purpose on the part of the Legislature to exclude the right of any county or municipality to levy a privilege tax on express companies. The tax so laid in favor of the State "covers the whole domain of privilege taxation that the Legislature intends shall be occupied, and excludes every other privilege tax" on express companies until further legislation with respect thereto shall be had. *Hunter* v. *Memphis*, 93 Tenn., 575. To make this construction doubly sure, the thirteenth section of the Act was inserted. That section is as follows: "That whenever the words 'in lieu of all other taxes,' occur in this Act, it is hereby declared to be the legislative intention that county and municipal taxes are excluded." Acts 1897, Ch. 2, p. 80.

Having full power upon this subject (*Railroad* v. *Harris*, 99 Tenn., 685; *Reelfoot Lake Levee District* v. *Dawson*, 97 Tenn., 151), it was entirely competent for the Legislature, in its discretion, to provide that the whole of the revenue thus raised should go to the State and that no county or municipality should have any part thereof.

This enactment is in irreconcilable conflict with that

under and by virtue of which the city collected the tax here under consideration.    There is such repugnance between the two provisions that they cannot co-exist or stand together.    It results, therefore, that the later enactment repealed the earlier one by implication. *Hunter* v. *Memphis*, 93 Tenn., 571.    It was suggested in argument that an express repeal was accomplished by the concluding section of the later Act, which is in this language: "That all laws and parts of laws in conflict with this Act be, and the same are hereby, repealed."    Acts 1897, Ch. 2, Sec. 18, p. 81.    This provision cannot operate as an express repeal, because the Act does not meet the constitutional requirement (Const., Art. II., Sec. 17), that the title or substance of all laws repealed shall be recited in the caption or body of the repealing act. The presence of this repealing clause in the Act is of no force whatever.    *State* v. *Yardley*, 95 Tenn., 548.

It is no answer to the conclusion that there was an implied repeal, to say that the subject of municipal taxation was not mentioned in the title of the Act of 1897.    The title of that Act is as follows: "An Act to provide revenue for the State of Tennessee and the counties thereof."    Confessedly, this title is broad enough to cover any provision that might be made to raise revenue for the State, and the declaration in the body of the Act, that any specific privilege tax laid for the State should be in lieu of all other privilege taxation on the same

business or occupation, is obviously within the scope of that title. It is clearly germane to the subject presented in the title, and that is all that the Constitution (Art. II., Sec. 17, cl. 2) requires. It is sufficient compliance with the constitutional requirement that the title disclose the general object of the bill. Recitation of details as to the mode and manner of accomplishing that object need not be made in the title. The details are for the body of the bill, and, so long as they are germane to the subject expressed in the title, the legislation is in accord with the mandate of the organic law. *State* v. *Yardley*, 95 Tenn., 553, 554; Black's Const. Law, Sec. 107; Cooley's Const. Lim. (5th Ed.), p. 174.

The decisions made in the case of *Knoxville* v. *Lewis*, 12 Lea, 180, and *Burke* v. *Memphis*, 94 Tenn., 692, are not in conflict with this well-established rule. In the former of these cases it was held that a provision for the collection of municipal taxes could not be incorporated in the body of a bill whose title related alone to State and county revenue; and in the latter it was held that a bill with a like title, did not, by the mere failure to mention the business of architects as a taxable privilege, impliedly repeal former laws authorizing the taxing district, to whose right the city succeeded, to collect a privilege tax from persons following that business. Neither of those cases is like the present one.

Nor can it be truly said that the provision of the Act of 1889, here involved, was a police regulation to prevent the use of narrow-tired vehicles upon the streets, rather than a law taxing privileges, and that, therefore, that provision was unaffected by the Act of 1897.

It is true a much larger sum was laid in that provision for the use of narrow than of broad-tired vehicles, and the difference may have been made to discourage the use of the former kind; yet it does not follow that the sum exacted in the one case or the other was a police charge and not a privilege tax. In the Act of 1889 and in the Act of 1879, amended thereby, the use of all such vehicles in the taxing district was distinctly called a privilege, and as a privilege was subjected to the designated tax. This shows the legislative intent, and is controlling.

Finally, the privilege of doing business as an express company includes the privilege of operating such wagons and other vehicles as may be essential to the orderly and efficient dispatch of that business; and, from this, it follows that a privilege tax laid on that business as a unit, as was done by the Act of 1897, covers the right to operate those necessary vehicles.

This principle was applied in *Bell* v. *Watson*, 3 Lea, 328. There the Court held that the payment of a tax for the privilege of operating a livery stable protected the owner from additional privilege

taxation on the buggies used in the business of the stable, it not appearing that the Legislature intended to impose the additional tax.

The company now before the Court paid to the State, for the year 1898, the sum required by the Act of 1897 as a privilege tax, and thereby relieved itself of all liability for privilege taxation for that year.

Affirmed.