### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## WESTERN DIVISION.

---

### JACKSON, APRIL TERM, 1902.

---

TURNER *v.* STATE.

*(Jackson.* April Term, 1902.)

1. **CONSTITUTIONAL LAW.** Jury act applicable only to Davidson and Shelby counties, construed and held valid.

The Act of 1901, ch. 124, entitled: "An act to create a board of commissioners for each county in the State, having a population of 120,000 inhabitants or over, under the federal census of 1900, or any subsequent federal census, and for the selection of juries, to prescribe the duties of the members of said board, and of the judges, and punish violation of this act; and to repeal all laws in conflict with this act;" was attacked by plaintiff in error, upon the grounds set out in the opinion, as being in contravention of the constitution of the State.

---

*The following cases were decided at the April term, 1902, and the opinions filed for publication during that term, but, for some reason, were not officially reported by the then Reporter. They are now published by the order of the court.—Reporter.

Turner v. State.

*Held*:   1st.  That said act is not vicious class legislation because applicable alone to the counties of Davidson and Shelby. (*Post,* pp. 602-603.)

State constitution cited:    Art. 11, sec. 8.

Cases cited:   State, ex rel., Maloney, 108 Tenn., 82; Luehrman v. Taxing District, 2 Lea, 425; Cook v. State, 90 Tenn., 407; Peterson v. State, 104 Tenn., 127.

2d.   That said act establishing an entirely new and distinct plan for the selection of jurors in the counties of Davidson and Shelby, radically and essentially different from the old system, works, by implication, a repeal of statutory provisions in conflict with the provisions of this act.  (*Post,* pp. 603-605.)

3rd.   That said act repealing by implication the provisions of the former acts upon the subject of selecting juries in the counties to which it is applicable is not violative of that provision of the constitution which requires that all laws which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended, it being settled law in this State that this requirement of the constitution does not apply to the statutes repealing by necessary implication, the provisions of other statutes, but only to those acts which *expressly* repeal, revive or amend former laws.  (*Post,* pp. 605-606.)

Constitution construed:    Article 2, sec. 17.

Cases cited:   State v. Yardley, 95 Tenn., 558; Shelton v. State, 96 Tenn., 521; Home Insurance Company v. Taxing District, 4 Lea, 644; Maney v. The State, 6 Lea, 218; Knoxville v. Lewis, 12 Lea, 190; Ballentine v. Pulaski, 15 Lea, 633; Poe v. State, 85 Tenn., 495; Railroad v. Crider, 91 Tenn., 507; Hunter v. Memphis, 93 Tenn., 571; Henley v. State, 98 Tenn., 707.

4th.   That the repealing clause found in the caption and in the last section of said act has no legal effect whatever, and does not bring the act within the constitutional requirement above cited.  The act is precisely the same in legal import and in

Turner v. .State.

point of validity as it would have been without that clause
whose presence makes the act neither more nor less a repeal-
ing law.   (*Post, pp.* 606-608.)

Cases cited:   State v. Yardley, 95 Tenn., 558; Memphis v. Ex-
press Company, 102 Tenn., 341.

2.  **BOARD OF JURY COMMISSIONERS.  Action of majority
valid.**
The action of a majority of the board of commissioners appointed
to select juries is valid, although one member of the board may
be disqualified, if the remaining two members constituting a
majority of the board are competent and qualified under the
statute.   (*Post, p.* 608.)

Statute construed:   Act of 1901, ch. 124, sec. —.

Case cited and approved:   Carroll v. Alsup, 107 Tenn., p. 257.

3.  **SAME.  Presumption in favor of competency.**
Every presumption must be made in favor of legality and com-
petency, and upon appeal to this court, in the absence of any
showing to the contrary, it will be presumed that the members
of a board of jury commissioners, or the members constituting
a majority of such board, whose competency has not been at-
tacked, are competent.   (*Post, pp.* 608, 610.)

4.  **JUDGE.  Power of, under Jury Act, to designate juror.**
The Act of 1901, ch. 124, provides that on the excusing of a
juror, another· shall be drawn as required by section 5, which
provides for the drawing of names from the jury box, and by
section 4, if the jury box is exhausted before the jury is com-
plete the judge may designate a juror.   On appeal it was
shown that a juror was excused and another appointed by the
trial judge.
*Held*:   That a substituted juror should be selected by drawing a
name from the·box, unless the names are exhausted, but in

Turner v. State.

the absence of showing to the contrary, it would be presumed that the jury box was exhausted when the juror was appointed by the court. (*Post, pp.* 608-610.)

5. **JURORS.** Disqualified by opinion, when.

Where a venireman on his *voir dire* stated that he had conversed with parties who had talked with witnesses . . . that he accepted what they said as being facts in the case . . . that the names of the witnesses were given him in those conversations and that he had an opinion well grounded and fixed, which could only be removed by evidence, such venireman was incompetent and disqualified to act as a juror. (*Post, pp.* 610-615.)

Cases cited: Payne v. State, 3 Humph., 377; Eason v. State, 6 Baxt., 474; Conatser v. State, 12 Lea, 44; Johnson v. State, 11 Lea, 50; Ward v. State, 102 Tenn., 730.

Cases cited and distinguished: Woods v. State, 99 Tenn., 187.

6. **SAME.** Disqualified juror should not be accepted.

It is well settled in this State that, if a jerson is disqualified as a juror, he should not be accepted because he states that, notwithstanding his opinion, he will render an impartial verdict. (*Post, p.* 614.)

Cases cited and approved: Rice v. State, 1 Yerg., 432; Eason v. State, 6 Bax., 474, 477; Conatser v. State, 12 Lea, 445; Spence v. State, 15 Lea, 445; Ward v. State, 102 Tenn., 730.

FROM SHELBY.

Appeal in error from the Criminal Court of Shelby County.— L. P. COOPER, Judge.

Turner v. State.

GEORGE B. PETERS, A. D. HUBBARD, and GEORGE W. WINFORD, for Turner.

The ATTORNEY-GENERAL, for the State.

MR. JUSTICE MCALISTER, delivered the opinion of the court.

Plaintiff in error was convicted of murder in the first degree, and sentenced to death, for killing one Will Haines. The prisoner appealed, and numerous errors for a reversal of the judgment are assigned upon the record.

The first assignment is that the court erred in not allowing the defendant to withdraw the plea which was made and entered before he had counsel, and in not permitting his attorneys to file proper pleas in his behalf. The killing occurred on September 25, 1901. The defendant was indicted on the 27th and arraigned on the 28th of September. He stated he had no attorney, but was about to retain one, whereupon the court directed a plea of not guilty to be filed, which was accordingly done. On the 5th of October, 1901, by his retained counsel, defendant asked that he be permitted to withdraw the plea of not guilty, and file a plea in abatement. The court declined to permit the plea already filed to be withdrawn, and refused to allow the plea in abatement to be filed. Counsel for defendant then moved that the plea of not guilty be permitted to stand, and that, in addition thereto, his plea in abatement be filed, under chap-

ter 121, Acts 1897, which provides that "a defendant can in any suit plead both in abatement and in bar at the same time and the plea in bar is no waiver of the plea in abatement, and when so pleaded both pleas shall be heard at the same time and judgment rendered on each plea."

We think that under the circumstances the court should have permitted the plea of not guilty to be withdrawn and the plea in abatement filed, or at least to have allowed the latter plea to be heard in conjunction with the plea in bar, as authorized by the act of 1897, which we hold applies as well to criminal as to civil cases. But whether the action of the court amounted to reversible error depends upon the question whether the plea in abatement was on its face a valid plea. The plea offered to be filed and refused by the court was, viz.:

"The defendant, G. W. Turner, comes and for plea says that the indictment filed herein and found by the grand jury of the criminal court of Shelby county is invalid and void for the following reasons: The act of the legislature of Tennessee under and by virtue of which said grand jury was impaneled and created, passed on April 18, 1901, being chapter 124 of the Acts of Tennessee of 1901, is unconstitutional and void, because:

"First. The said act, in its body and caption, applies only to counties in Tennessee which have a population of one hundred and twenty thousand inhabitants, or over, under the federal census of 1900, or any subsequent

federal census.　There are only two counties in Tennessee which have over one hundred and twenty thousand inhabitants under the federal census of 1900, viz., Shelby and Davidson; and therefore this act applies only to these two counties, and not to any other counties in the State.　The said act is a partial, and not a general, law, and violates section 8 of article 11 of the constitution of Tennessee.

"Second.　The said act of the legislature under which the grand jury which found the idictment herein was attempted to be impaneled violates section 17 of article 2 of the constitution of Tennessee, which provides that 'all acts which repeal, revive or amend former laws shall recite in their caption or otherwise the title or substance of the law repealed, revived, or amended.' The act in question attempts to repeal and amend important existing laws in the State, but it does not, in its caption or otherwise, recite the title or the substance of the laws so repealed and amended.

"Third.　The aforesaid act also violates the provision in section 17, art. 2, of the constitution of Tennessee, which declares that 'no bill shall become a law which embraces more than one subject, that subject to be expressed in the title.' It clearly embraces more than one subject.

"Fourth.　The said act of the legislature of 1901 is invalid and void in its provisions with respect to the selection of grand jurors and other jurors, wherein it confers upon the judges of the courts discretionary and ar-

bitrary power and authority to discharge and select such jurors.

"Fifth. The said act of 1901 contemplates and requires that the judges of the courts shall appoint the jury commissioners, and that in counties where there is a chancellor it contemplates that he should act with the other judges. The Honorable F. H. Heiskell. is the chancellor in Shelby county, but did not act with the other judges in the selection of the jury commissioners who appointed the grand jurors who found this indictment.

"Sixth. If the aforesaid act of 1901 is valid, its provisions have not been complied with, but have been violated in the following respects: It provides that no person who has a 'suit pending in said court at the time of their or his appointment shall be appointed as a jury commissioner.' The court referred to is the circuit court. John Overton, Esq., was appointed a jury commissioner, and at the time of his appointment there was pending in the second circuit court of Shelby county (the judge of which acted in appointing said Overton) a suit brought by Overton & Overton v. J. M. Bowen et al., the said John Overton being a member of the firm of Overton & Overton, who instituted the suit. He was, for this reason, disqualified to act as a jury commissioner.

"Seventh. If the said act of 1901 is valid, the grand jury which found the indictment herein was not legally impaneled, and its acts are void, because the act requires

the names selected by the jury commissioners and reported by them to the criminal court shall be drawn from a box.   This was done at the beginning of the September term, 1901, of the criminal court, and thirteen of the grand jurors were selected on the first day of said term, and were sworn, and proceeded to discharge their duties.  On the 18th day of September, 1901, H. C. Polk, a member of said grand jury, was discharged by his honor, Judge L. P. Cooper, and L. H. Mahony was placed on the grand jury in lieu of him.   The name of said L. H. Mahony was not reported to the criminal court by the jury commissioners, nor was it drawn from the jury box, but he was appointed by his honor, Judge Cooper, without regard to the requirements to the act in question.   On the 20th day of September, 1901, J. D. Brewster was also by the said judge excused from serving on said grand jury, he being a member thereof, and Mike Lee was appointed by the criminal court judge, although his name has never been sent in to said court by the jury commissioners, nor was his name drawn from the box, and he was appointed in disregard of the positive and mandatory requirements of the jury act.  Hence, the grand jury, which found the indictment was not legally selected and the indictment found by it against the defendant herein is null and void.  Wright, Peters & Wright, A. D. Hubbard, Attorneys.

"The defendant makes oath that the above plea is true in substance and in fact.   G. W. Turner.

"Sworn to and subscribed before me this 16th day of October, 1901.

"R. S. CAPERS, D. C."

It will be observed that the burden of this plea is an attack upon the new jury law found in chapter 124, Acts 1901. The first objection to its constitutionality is that it only applies to counties having a population of 120,000 inhabitants or over, and that the counties of Davidson and Shelby are thereby alone embraced in its provisions. The insistence is that the law is therefore local and partial, and not a general law; or, in other words, that it is vicious class legislation, which violates article 11, section 8, of the constitution. This objection is not tenable. This subject was fully considered by this court at Knoxville, September term, 1901, in the case of *Condon* v. *Maloney,* 108 Tenn., 82, 65 S. W., 871. It was insisted in that case that chapter 8, Acts 1900, entitled, "An act to create a board of public road commissioners to regulate the laying out and working of public roads in this State in counties having a population of not less than 70,000 and not more than 90,000 under the federal census of 1900, or any subsequent federal census," etc., was vicious class legislation, since, as a matter of fact, the act only applied to Knox county. This court, however, upheld the constitutionality of the act, citing *Luehrman* v. *Taxing District,* 2 Lea, 425; *Cook* v. *State,* 90 Tenn., 407, 16 S. W., 471, 13 L. R. A., 183; *Peterson* v. *State,* 104 Tenn.,

127, 56 S. W., 834. These cases are conclusive of the same objection now used against this act.

It is next insisted the act violates article 2, section 17, of the constitution, in that it repeals various laws of the State relating to the selection, summoning, and qualification of jurors, but does not, in its caption or otherwise, recite the title or substance of the laws so repealed. The act of 1901 provides that "service on a regular panel within two years shall disqualify a person." Chapter 124, Acts 1901, section 4. "It shall not be cause for challenge of a person drawn or summonsed under this section that he has served on a regular jury within two years." Id. section 7. Elaborate provisions are also made for selection of jurors. The jury commissioners are to be appointed by certain judges. These commissioners are to place the names of citizens in a jury box, and are to draw them from the same for the juries in the several courts. Id., section 1.

By the general law of Tennessee now in force, independent of this act, the county courts are required to appoint jurors for the different courts, "but no person shall be summonsed or serve on the venire who has served on a venire for a period of two years preceding." Shannon's Code, section 5793. "No court shall appoint any person to serve as a juror more than one time in each period of two years, either on the original panel or to fill a vacancy therein." Id., section 5799. It is claimed that these and other important laws are repealed by the act under investigation; that neither the title nor the

substance of any of these laws is recited, mentioned, or
referred to in any form in the body or the caption of the
act of 1901. It is true chapter 124, Acts 1901, provides
an entirely new plan for the selection of jurors in the
counties embraced within the population defined by the
act. The first section of the act provides for a board of
jury commissioners, to be appointed by the circuit
judges, chancellors, or other judges whose duty it should
be to hold the criminal or circuit court. Said board is
to consist of three discreet persons who are householders
and freeholders of the county, and who are not practic-
ing attorneys at law, or State or county officers, and who
have no suit pending in said court at the time, and not
more than two of whom shall belong to the same politi-
cal party. The fourth section of the act makes it the
duty of said board to select the names of upright and
intelligent men from each and every district in the
county. The list is required to be reported in a well-
bound book to the next term of the circuit court. The
names are then written on slips of paper, and placed in
the jury box, which shall be kept securely locked, and
not opened except in the presence of the board, for the
purpose of drawing therefrom names of jurors or mak-
ing a new list, or in open court, by order of the circuit
or criminal court, for good and sufficient cause. It is
made a misdemeanor by the act for any person to ask
to have his name placed on the list of jurors. The names
of the jurors are to be placed in the box and drawn there-
from and a report of them is to be made by the jury com-

Turner v. State.

missioners to the criminal court; and, when summoned, such persons shall constitute the panel of grand and petit jurors for the term, "and said report shall be spread upon the minutes of the court." Acts 1901, c. 124, sections 4, 5.

If the required number of jurors is not obtained from this panel, then the clerk of the circuit court shall produce the box in open court, and other names shall be drawn from it until the grand and petit jurors are completed. Id., c. 124, section 5. The court shall not have the right to excuse any person summonsed as a juror, except for the causes stated in the act, which must "be made to appear by affidavit in writing." If, by reason of the excusing of jurors, it becomes necessary to have additional jurors during the term, they shall be drawn from the box; the drawing to be done in open court, as provided by the act. Id., c. 124, section 8.

It will be observed from the provisions just quoted that this act is a radical departure from the old system of selecting jurors, and inaugurates an entirely new plan. It is insisted that, because the new act does not, in its caption or otherwise, recite the title or substance of existing laws regulating the selection of juries in other counties, the act is therefore void. It is said such an act violates section 17, art. 2, of the constitution, which requires that all laws which repeal, revive, or amend former laws shall recite in their caption or otherwise the title or substance of the law repealed, revived, or amended. But in answer to this objection it has been

frequently held by this court that this requirement of the constitution does not apply to all legislation. It relates alone to those acts which expressly repeal, revive, or amend former laws, and does not embrace implied amendments, nor implied repeals, nor implied revivors. *State* v. *Yardley,* 95 Tenn., 558, 32 S. W., 481, 34 L. R. A., 656; *Shelton* v. *State,* 96 Tenn., 521, 32 S. W., 967; *Home Ins. Co.* v. *Taxing Dist.,* 4 Lea, 644; *Maney* v. *State,* 6 Lea, 218; *City of Knoxville* v. *Lewis,* 12 Lea, 180; *Ballentine* v. *Town of Pulaski,* 15 Lea, 633; *Poe* v. *State,* 85 Tenn., 495, 3 S. W., 658; *Railroad* v. *Crider,* 91 Tenn., 507, 19 S. W., 618; *Hunter* v. *City of Memphis,* 93 Tenn., 571, 26 S. W., 828; *Poe* v. *State,* 85 Tenn., 495, 3 S. W., 658; *Henley* v. *State,* 98 Tenn., 707, 41 S. W., 352, 1104, 39 L. R. A., 126. It is said, however, that chapter 124, Acts 1901, does, in its caption, and also in its body, expressly repeal other laws, but does not recite them.

The title of the act, as printed and punctuated, is: "An act to create a board of commissioners for each county in the State, having a population of 120,000 inhabitants, or over, under the federal census of 1900, or any subsequent federal census, and for the selection of juries; to prescribe the duties of the members of said board and of the judges, and punish violations of this act; to provide for jury lists and jury boxes to be kept in each county of this State; and to repeal all laws in conflict with this act." The last section of the act contains a general clause repealing all laws in conflict with this

act.   But the repealing clause found in the last section
of this act has no legal effect whatever.   The act is pre-
cisely the same in legal import and in point of validity
as it would have been without that clause, whose pres-
ence makes the act neither more nor less a repealing law.
*State* v. *Yardley,* 95 Tenn., 558, 32 S. W., 481, 34 L. R.
A., 656; *City of Memphis* v. *American Exp. Co.,* 102
Tenn., 341, 52 S. W., 172.   The words of the caption,
viz., "and to repeal all laws in conflict with this act,"
have no greater virtue or operation in law, not being fol-
lowed in the body or enacting part of the bill with any
repealing provision.   Such words cannot of themselves,
and without more, give character to the act, but are to be
regarded as mere surplusage.   The title or caption of the
act considered in the case of *Shelton* v. *State,* 96 Tenn.,
524, 32 S. W., 967, was wholly amendatory, expressing
no other purpose, and was followed in the body of the act
with provisions amendatory in their nature, and neces-
sarily operative in that sense; hence that act was prop-
erly held to be amendatory.   The two acts do not fall
under the same class.

Again, it must be remembered that the object of the
act of 1901 is not to repeal existing laws regulating the
mode of selecting jurors and prescribing their qualifica-
tions, but to substitute a new system for counties falling
within its provisions.   These general laws of the State
are left intact, and are only repealed by implication so
far as the act of 1901 is operative.   The registration
and Dortch laws have been sustained by this court, al-

though applying only to counties of a prescribed population. *Cook* v. *State,* 90 Tenn., 407, 16 S. W., 741, 13 L. R. A., 183. The road laws have also been upheld, although the last act passed upon by this court only applied to one county (Knox). *Condon* v. *Maloney,* 108 Tenn., 82, 65 S. W., 871. It was not supposed that those acts repealed the general election or road laws of the State. This disposes of all objections to the constitutionality of the act.

It is futher averred in said plea in abatement that Jno. Overton, Esq., was appointed a jury commissioner in violation of the act which provides that no person who has a suit pending in said court at the term of his appointment shall be eligible. It is then averred that Mr. Overton had a suit pending in the second circuit court of Shelby county at the time of his appointment by the judge thereof. It is insisted that for this reason he was disqualified as a jury commissioner. We held in *Carroll* v. *Alsup,* 107 Tenn., 257, 64 S. W., 193, that, although one member of a board may be disqualified, if the remaining two members who acted in conjunction with the disqualified member are competent, their action is valid. It is not averred in the plea that the two remaining members of the board were disqualified, and every presumption must be made in favor of their competency.

It is next averred in the plea that on the 18th day of September, 1901, just prior to the finding of this indictment, the judge of the criminal court discharged H. C.

Polk, a member of the grand jury, and in his stead appointed I. H. Mahony; and that on the 20th of September, 1901, his honor excused one J. H. Brewster from service on the grand jury, and in his place appointed one Mike Lee. It is then averred that neither the name of L. H. Mahony nor Mike Lee had ever been reported to said court by the jury commissioners, nor was either name drawn from the jury box.

It is further averred that both Brewster and Polk had been appointed by the jury commissioners and selected as grand jurors according to the provisions of said Act of 1901, and that the judge of the criminal court appointed said Lee and Mahony in disregard of the mandatory requirements of the jury act. The point of the averment is that the substitute jurors should have been drawn from the jury box, as provided by the jury law of 1901. It is then argued that two members of the grand jury that found this indictment were thus illegally appointed, and this fact should vitiate the indictment.

We have no doubt upon a proper construction of the jury act the substituted jurors and all others should be drawn from the jury box in the manner prescribed by law, provided the names in the jury box have not been exhausted. But section 4 of the jury act provides that, if the jury box is exhausted before the jury is completed, the sheriff shall summons such other men as may be designated by the presiding judge until the jury is complete. We think this provision broad enough to confer author-

ity on the presiding judge to fill vacancies in the grand jury when they occur and it appears that the jury box has been exhausted. It is not averred in the plea that the jury box had not been exhausted, and, in the absence of such an averment, every intendment and presumption must be made in favor of the regularity and validity of the judge's action. We are bound to presume that he would not have undertaken to fill these vacancies with jurors of his own designation and selection unless the jury box had been exhausted, which act alone conferred authority upon him to make the appointments. We would also presume, in the absence of averments to the contrary, that the judge acted in conformity with the statute in excusing the two regular grand jurors, Polk and Brewster. We are, therefore, of the opinion there was no reversible error in the action of the court in refusing to permit the plea in abatement to be filed, since, the plea was not a valid one on its face.

It is next assigned as error that the court held C. W. Edmunds competent as a juror, and that said juror was forced upon defendant after all of his peremptory challenges had been exhausted. It is insisted the venireman was disqualified by reason of having formed and expressed an opinion unfavorable to defendant. He stated on his *voir dire* that "from general information and reading and talking on the subject" he had formed and expressed an opinion.

He was asked:

"Q. Have you conversed with any witness in this

case? A. I have conversed with parties who had conversed with witnesses. I didn't converse with witnesses myself.

"Q. You haven't talked, however, with any witnesses in this case? A. I haven't talked directly with the witnesses."

Again, he was asked by the State:

"Q. Have you any bias, prejudice, or feeling, either one way or the other, which would prevent you from being absolutely fair and just as a juror? A. I have some feeling in the matter, sir.

"Q. You say you didn't talk with witnesses, but conversed with persons who had talked with witnesses? A. Yes, sir.

"Q. And you accept what they said as being the facts in the case? A. Yes, sir."

He further says: I don't call to mind now the names of the witnesses given by the paper.

"Q. Were the names of witnesses given you in these other conversations you speak of? A. Yes, sir.

"Q. Would it not require evidence to remove this opinion? A. Yes, sir; it would.

"Q. And the opinion which you have formed is one adverse and unfavorable to the defendant, is it not? A. Yes, sir."

When asked if he could entirely divest himself of this opinion when he began the consideration of the case, or "would you only get rid of it after the evidence had removed it?" he said: "A. I don't think I would get rid

of it, sir, until the evidence would remove it."

"Q. Yes; the opinion is a decided one, is it not? A. The opinion is pretty well grounded.

"Q. Sir? A. The opinion, I say, is well grounded, and it would require, of course, evidence."

He was then challenged first for cause, and then peremptorily. But the court overruled both objections. It will be observed that during the course of his examination the juror stated he conversed with parties who had conversed with witnesses; that he accepted what they said as being the facts in the case; that he does not recall their names, but the names of the witnesses were given him in those conversations; that he has an opinion well grounded and fixed, etc.; that his opinion was unfavorable to the defendant, and that it would require evidence to remove it. Upon these facts Edmunds was disqualified as a juror.

In *Payne* v. *State* it is held (referring to a juror): "His mind is equally preoccupied, and in an unfit condition to examine impartially the prisoner's case, whether his information came from the witnesses or from others who, professing to have ascertained the facts may communicate a narrative of them to him." *Payne* v. *State,* 3 Humph., 377.

In *Eason* v. *State* it is held as the settled meaning of the constitutional guaranty of the right of trial by an impartial jury that: "None are impartial who have formed or expressed their opinions, either from hearing the evidence, or from hearing others detail it who did

hear it, or from conversing with those who professed to know the facts and to give a detail of them, or from hearing such persons in' conversation with others give such details." *Eason* v. *State,* 6 Baxt., 474.

In *Conatser* v. *State,* 12 Lea, 443, it is said: "All of the cases agree that, if a juror has formed an opinion from personal knowledge of the facts, or from information derived from witnesses, or from others professing to know the facts, he is incompetent." *Johnson* v. *State,* 11 Lea, 50. If the opinion is founded upon mere rumor, although it may be fixed, and require evidence to remove it, it does not disqualify, if the juror says he can disregard the opinion, and render a verdict solely upon the law and evidence. *Conatser* v. *State,* 12 Lea, 445.

In *Woods* v. *State* the rule is thus stated: "The opinions which were based on personal knowledge of the facts of the case, or upon a statement of the facts made by the witnesses themselves, or by others who have heard the witnesses relate them, disqualify; but those formed from rumor do not disqualify." *Woods* v. *State,* 99 Tenn., 187, 41 S. W., 812, approved in *Ward* v. *State,* 102 Tenn., 730, 52 S. W., 996.

In *Ward* v. *State,* the rule is again announced: "An opinion formed from a personal knowledge of the facts or from hearing witnesses state them, or from reading in any newspaper a report of the statement of the actual witnesses, is a disqualifying one." *Ward* v. *State,* 102 Tenn., 730, 52 S. W., 997. In the Woods case, supra, the juror's opinion was formed purely from

rumor. The court observed: "He had heard no state-ment of the facts by the witnesses, nor by others to whom the witnesses had related them, nor did the newspaper account purport to be made by those who professed to know the facts." *Woods* v. *State,* 99 Tenn., 187, 41 S. W., 812.

It thus appearing from the authorities, when applied to the facts; that Edmunds was disqualified as a juror, the fact that he stated he would render an impartial ver-dict would not make him a competent juror. The opin-ion of the juror was not formed merely from rumor, but after talking with persons who had conversed with the witnesses, and whose names were given at the time. It is well settled that, if a person is disqualified as a juror, he should not be accepted because he states that, not-withstanding his opinion, he will render an impartial verdict. *Rice* v. *State,* 1 Yerg., 432. When disqualified he cannot render himself "impartial" by expressing the belief that he can render a fair and impartial verdict ac-cording to the law and the proof, notwithstanding the opinion in his mind. *Eason* v. *State,* 6 Baxt., 474-477.

In *Conatser* v. *State,* the court held: "If the opinion of the juror be clearly such as to disqualify him, no in-quiry, as we have seen, is permissible, whether, notwith-standing his opinion, he will be governed alone by the evidence." He should be rejected at once. *Conatser* v. *State,* 12 Lea, 445; *Spence* v. *State,* 15 Lea, 545.

The rule is thus stated in *Ward* v. *State:* "It is clear that the opinion which this juror had was a disqualify-

Turner v. State.

ing one, and he could not qualify himself by saying that he could give the prisoner a fair trial."

It results that for this plain and palpable error the court is constrained to reverse the judgment and remand the cause for a new trial.