IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 6, 2013 Session

## CITY OF MEMPHIS, TENNESSEE ET AL. v. TRE HARGETT ET AL.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Chancery Court for Davidson County**
**No. 12-1269-II      Carol L. McCoy, Chancellor**

___

**No. M2012-02141-SC-R11-CV - Filed October 17, 2013**

___

WILLIAM C. KOCH JR, J., concurring.

In 2011, the Tennessee General Assembly amended Tennessee's voting procedures to provide for the use of photographic identification in elections.[1]  The General Assembly amended these procedures in 2012[2] and again in 2013.[3]  I concur with the Court's decision to uphold the constitutionality of these procedures as they stood in 2012.  I write separately, however, to address the threshold matter of the standard of review that should be used to address the constitutionality of these amendments.

**I.**

Throughout this litigation, the plaintiffs have insisted that the courts should employ the equal protection "strict scrutiny" standard of review to analyze the constitutionality of the photographic identification requirements in Tenn. Code Ann. § 2-7-112.  The State has acquiesced in this standard.  Based on this "concession," the Court has decided that it "will

___

[1] Act of May 20, 2011, ch. 323, 2011 Tenn. Pub. Acts 790 (codified at Tenn. Code Ann. § 2-7-112 (Supp. 2011)); Act of May 21, 2011, ch. 386, 2011 Tenn. Pub. Acts 960 (codified at Tenn. Code Ann. § 2-7-112 (Supp. 2011)).

[2] Act of Feb. 23, 2012, ch. 575, 2012 Tenn. Pub. Acts 364 (codified in part at Tenn. Code Ann. § 2-7-112 (Supp. 2012)); Act of Apr. 23, 2012, ch. 938, § 2, 2012 Tenn. Pub. Acts 1395, 1395 (codified at Tenn. Code Ann. § 2-7-112 (Supp. 2012)).

[3] Act of Apr. 4, 2013, ch. 178, 2013 Tenn. Pub. Acts ___ (codified at Tenn. Code Ann. § 2-7-112 (Supp. 2013)); Act of Apr. 1, 2013, ch. 231, § 9, 2013 Tenn. Pub. Acts ___, ___ (codified at Tenn. Code Ann. § 2-7-112 (Supp. 2013)).

assume, rather than decide, that strict scrutiny applies." Because other challenges to Tennessee's voting procedures will surely arise in the future, the question of the proper standard of review should be settled now.

The standards of review are "the metaphorical hinges on the door to the realm of appellate review."[4] Even though they are treated by many lawyers and judges as routine matters, the choice of the correct standard of review can be "influential, if not dispositive." *Schwimmer v. Sony Corp. of Am.*, 459 U.S. 1007, 1009 (1982) (White, J., dissenting from the denial of certiorari).[5] Because of their importance, the choice of the applicable standard of review should be the starting point for the resolution of the issues on appeal.[6]

Standards of review have been an integral part of American jurisprudence since the earliest days of our country.[7] They are embodied in constitutions, statutes, court rules, and judicial decisions.[8] These standards serve the important function of limiting appellate courts to their proper role when passing on the conduct of other decision-makers. *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 320 (4th Cir. 2008); Timothy J. Storm, *The Standard of Review Does Matter: Evidence of Judicial Self-Restraint in the Illinois Appellate*

---

[4]Todd J. Bruno, *Say What?? Confusion in the Courts over What Is the Proper Standard of Review for Hearsay Rulings*, 18 Suffolk J. Trial & App. Advoc. 1, 6 (2013) ("Bruno").

[5]*See also* Bruno, 18 Suffolk J. Trial & App. Advoc. at 6 (stating that standards of review are "more often than not, outcome-determinative"); 1 Steven A. Childress & Martha S. Davis, *Federal Standards of Review* § 1.02, at 1-16 (4th ed. 2010) ("Childress & Davis") (pointing out that "the proper standard of review . . . often turns out to be a vital issue on appeal"); Amanda Peters, *The Meaning, Measure, and Misuse of Standards of Review*, 13 Lewis & Clark L. Rev. 233, 241 (2009) (quoting Michael D. Zimmerman's observation that "[s]tandards of review doom any number of appeals from the start"); Barry Sullivan, *Standards of Review*, in *Appellate Advocacy* 59, 59 (Peter J. Carre et al., eds., 1981) (noting that "a thoughtful consideration of the appropriate standard of review will often determine the outcome of an appeal").

[6]Timothy P. O'Neill, *Standards of Review in Illinois Criminal Cases: The Need for Major Reform*, 17 S. Ill. U. L.J. 51, 51 (1992). Major B. Harding, the former Chief Justice of the Florida Supreme Court, has observed that "[a]fter determining jurisdiction, the next important issue to be resolved in an appellate matter is the standard of review. Making this determination at the outset helps in guiding attorneys and judges in the appropriate resolution of the case." Raymond T. Elligett, Jr. & John M. Scheb, *Appellate Standards of Review - How Important Are They?*, Fla. B.J., Feb. 1996, at 33.

[7]Martha S. Davis, *Standards of Review: Judicial Review of Discretionary Decisionmaking*, 2 J. App. Proc. & Process 47, 47 (2000).

[8]Richard H. W. Maloy, *"Standards of Review" – Just a Tip of the Icicle*, 77 U. Det. Mercy L. Rev. 603, 609 (2000) ("Maloy").

*Court*, 34 S. Ill. U. L.J. 73, 78 (2009).[9]  They do so by "defin[ing] the level of examination the court may apply, including the degree of deference it will accord to the [lower] court's findings of fact and conclusions of law."  *Hodge v. Craig*, 382 S.W.3d 325, 333 n.2 (Tenn. 2012) (quoting 19 James Wm. Moore et al., *Moore's Federal Practice* ¶ 206.01 (3d ed. 2009)).[10]

The question of the application of the proper standard of review is a question of law. *Warehime v. Warehime*, 860 A.2d 41, 46 n.5 (Pa. 2004).  Accordingly, the reviewing court must ultimately decide what standard of review will be used.  *Worth v. Tyer*, 276 F.3d 249, 262 n.4 (7th Cir. 2001); *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996); *Citizens Awareness Network v. Montana Bd. of Envtl. Review*, 2010 MT 10, ¶ 14, 227 P.3d 583, 588.[11]

Parties cannot choose or control the standard or standards of review applicable to their case.  *United States v. Vontsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992); *Town of Chandler v. Indiana-American Water Co.*, 892 N.E.2d 1264, 1268 (Ind. Ct. App. 2008).  Nor can they stipulate or create the applicable standard of review.  *Barnett v. Hicks*, 829 P.2d 1087, 1093 (Wash. 1992).  In addition, a party cannot waive the application of the correct standard of review by failing to argue it.  *Brown v. Smith*, 551 F.3d 424, 428 n.2 (6th Cir. 2008); *see also Worth v. Tyer*, 276 F.3d at 262 n.4; *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1022 n.4 (9th Cir. 1997) (en banc) (O'Scannlain, J., concurring in part and dissenting in part); *Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1519 n.24 (5th Cir. 1994); *Borough of Jenkintown v. Board of Comm'rs of Abington Twp.*, 858 A.2d 136, 138 (Pa. Commw. Ct. 2004).  Appellate courts have the authority to identify and apply the correct legal standard whether argued by the parties or not.  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013).

Although Tenn. R. App. P. 27(a)(7)(B) envisions that the parties will identify for the appellate court the standard or standards of review they propose to apply to the issues being

---

[9]The Michigan Supreme Court has noted that "[a]bsent a comprehensible standard of review, judicial review cannot be undertaken in pursuit of the rule of law, but only in pursuit of the personal preferences of individual judges."  *Warda v. City Council of the City of Flushing*, 696 N.W.2d 671, 680 (Mich. 2005).

[10]*See also Capshaw v. Gulf Ins. Co.*, 2005 OK 5, ¶ 8, 107 P.3d 595, 600 (noting that "[a]n appellate court's standard of review is not mere ritualistic legal liturgy.  It defines the permissible sweep of critical testing to be undertaken by a reviewing court."); 1 Childress & Davis § 1.01, at 1-2 (stating that "a standard of review prescribes the degree of deference given by the reviewing court to the actions or decisions under review"); 1 Childress & Davis § 1.03.

[11]*See also* Maloy, 77 U. Det. Mercy L. Rev. at 610.

presented, a party's failure to propose a standard of review or to propose the correct standard of review does not prevent the appellate court from applying the correct standard of review. Accordingly, it is the appellate court's "duty . . . to plainly identify the appropriate standard of review and then to clearly employ that standard when reviewing the prior decision." *Stevens v. Employer-Teamsters Joint Council No. 84 Pension Fund*, 979 F.2d 444, 458 (6th Cir. 1992).

## II.

If the plaintiffs were asserting their rights under the United States Constitution, the choice of the correct standard of review would have been simple because the United States Supreme Court has already authoritatively identified it. In a recent case involving the use of photographic identification in state elections, the Court held, based on the facts of the case, that the challenged photographic identification requirement does not "impose[] 'excessively burdensome requirements' on any class of voters." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 202 (2008) (quoting *Storer v. Brown*, 415 U.S. 724, 738 (1974)). In reaching this conclusion, the Court employed a "balancing approach" in which it "weigh[ed] the asserted injury to the right to vote against the 'precise interests put forward by the State as justifications for the burden imposed by the rule.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. at 190 (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)).[12]

Sensing the futility of a challenge to Tenn. Code Ann. § 2-7-112 based on the United States Constitution, the plaintiffs in this case limited their claim to their right to vote under the Constitution of Tennessee. Accordingly, we are at a constitutional crossroad. Were we to find that the Constitution of Tennessee's protection of the right to vote is similar to the United States Constitution's protection of the right to vote, we could adopt the standard of review and analysis employed by the United States Supreme Court in *Crawford v. Marion County Election Board*. If, however, we were to find that the Constitution of Tennessee provides different or broader protection of the right to vote than the United States Constitution, then it would be our responsibility to fashion a standard of review that is consistent with the Constitution of Tennessee. The parties did not address these matters in their briefs or oral arguments. Fortunately, this Court has previously addressed similar issues.

---

[12] This case does not present an occasion to analyze the standard of review used by the United States Supreme Court in *Crawford*. However, a more detailed analysis can be found in 4 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law* § 18.31(a) (5th ed. 2013) ("Rotunda & Nowak"); *see also* 3 Rotunda & Nowak § 18.3(a) (5th ed. 2012).

There can be little debate that the right to vote protected by Article I, Section 5 is a fundamental right. *May v. Carlton*, 245 S.W.3d 340, 346 (Tenn. 2008); *Bemis Pentecostal Church v. State*, 731 S.W.2d 897, 901 (Tenn. 1987). However, this right is not absolute. It has long been accepted that states have a compelling interest in securing the right to vote freely and effectively. *Burson v. Freeman*, 504 U.S. 191, 208 (1992), *rev'g Freeman v. Burson*, 802 S.W.2d 210 (Tenn. 1990). As the United States Supreme Court has noted, "[p]reservation of the 'purity of the ballot box' is a formidable-sounding state interest." *Dunn v. Blumstein*, 405 U.S. 330, 345 (1972).

In 1869, this Court held that "[t]he duty of the Legislature is, to protect both the public interest and the private right in the franchise, and for this purpose, it may provide reasonable regulations for the exercise of the right . . . and adopt precautions against frauds and violence." *State v. Staten*, 46 Tenn. (6 Cold.) 233, 255-56 (1869) (Andrews, J.). The drafters of the 1870 Constitution of Tennessee incorporated this holding in Article IV, Section 1, which states that "[t]he General Assembly shall have power to enact . . . laws to secure the freedom of elections and the purity of the ballot box." This Court has observed that Article I, Section 5 and Article IV, Section 1 were adopted "in a spirit of conservatism appropriate to the times" and that the purpose of these provisions was "to preserve . . . a republican form of government for the State." *Cook v. State*, 90 Tenn. 407, 410, 16 S.W. 471, 472 (1891).

Article I, Section 5 and Article IV, Section 1 should be read together. *Earnest v. Greene Cnty.*, 138 Tenn. 442, 445, 198 S.W. 417, 417 (1917). They must also be construed in light of this Court's holding that the General Assembly

> may employ every legislative means, however vigorous, to accomplish the ends contemplated by the framers of the Constitutions. The Legislatures are, as a rule, the judges of the means[13] to be adopted, and their necessity. The power to regulate and reform is theirs. They are presumed to know the condition and wants of the State.

*Cook v. State*, 90 Tenn. at 413-14, 16 S.W. at 473, as well as its holding that "[i]t is fundamental and axiomatic that a State legislature is the reservoir of all the reserved power of the people, except as it may be limited and circumscribed by the state and federal Constitutions." *Ledgerwood v. Pitts*, 122 Tenn. 570, 588, 125 S.W. 1036, 1039 (1910).

---

[13] The Tennessee Reporter uses the word "means," but the Southwestern Reporter uses the word "measures."

In 1891, this Court, striking what it believed to be the proper balance between Article I, Section 5 and Article IV, Section 1, articulated a standard for reviewing constitutional challenges to statutes regulating the manner in which elections are conducted. The case involved a challenge to a statute requiring voters to mark their ballot to signify the candidate for whom they had voted. The Court stated:

> The Constitution surrounded the right of suffrage with some inconveniences, and authorized the Legislature to attach more. In the exercise of its power, the Legislature must be reasonable and just, not imposing impossible or oppressive conditions, else its legislation will be void.

*Cook v. State*, 90 Tenn. at 412-13, 16 S.W. at 473. This standard bears a strong resemblance to the United States Supreme Court's "excessively burdensome requirements" standard in *Crawford*.

The standard of review contained in *Cook v. State* has remained unaltered for over one hundred twenty years. During this time, the power of the General Assembly to secure the "purity of the ballot box" has not been diminished, and the right to vote is neither more nor less fundamental today than it was in 1891. Accordingly, in the absence of argument from either party regarding the replacement of the *Cook* standard with another standard, I would review the constitutionality of the 2011 and 2012 amendments to Tenn. Code Ann. § 2-7-112 using the "impossible or oppressive conditions" standard in *Cook v. State*. Based on my review of the record, I would find that the plaintiffs have failed to present evidence demonstrating that requiring the use of photographic identification in the voting process in the manner authorized by Tenn. Code Ann. § 2-7-112 amounts to an impossible or oppressive condition on the ability of an otherwise qualified voter to cast his or her vote in elections conducted in Tennessee.

_____
WILLIAM C. KOCH JR., JUSTICE