Woods *v.* State.

---

WOODS *v.* STATE.

*(Jackson.*    June 9,  1897.)

CRIMINAL PRACTICE. *Opinion that does not disqualify juror.*

A juror is not disqualified to sit upon a trial for murder by read-
ing a detailed account of the killing in the newspapers and
forming an opinion thereon as to the guilt or innocence of the
accused, where such account does not purport to be made
by those who profess to know the facts, and he states that he
is without bias or prejudice, and can render a fair and impar-
tial verdict solely on the law and the evidence, as the account
read amounts to rumor only, which will not disqualify.

Constitution construed: Art. 1, Sec. 9 (U. S.), VI. Amendment.

Cases cited: Rice *v.* State, 1 Yer., 432; McGowan *v.* State, 9 Yer.,
184; Payne *v.* State, 3 Hum., 376; Moses *v.* State, 10 Hum., 456;
Moses *v.* State, 11 Hum., 232; Alfred *v.* State, 2 Swan, 581; Ea-
son *v.* State, 6 Bax., 466: Conatser *v.* State, 12 Lea, 436: Spence
*v.* State, 15 Lea, 539.

---

FROM  SHELBY.

---

Appeal in error from Criminal Court of Shelby
County.   L. P. COOPER, J.

J. J. DuBOSE for Woods.

Attorney-general PICKLE for State.

CALDWELL, J.    William A. Woods was indicted
in the Criminal Court of Shelby County for the

Woods *v.* State.

murder of Samuel Hughes. He was tried and convicted of murder in the second degree, and his punishment was assessed at fifteen years in the State prison. The case is brought into this Court by an appeal in the nature of a writ of error. That the deceased, Samuel Hughes, was mortally wounded and killed by the defendant, William A. Woods, is a conceded fact.

Hughes was clerk and bartender for E. B. Ford, who was doing business in the city of Memphis. Woods was engaged in business near by. Between eight and nine o'clock on the night of March 23, 1894, Woods walked into Ford's store and challenged him for a game of cards. Ford declined the challenge, but Hughes accepted it. Thereupon the game was commenced across the bar, Woods being in front and Hughes in the rear. After awhile the playing ceased, and a dispute arose about the winnings. Hughes insisted that he was two games ahead, and that Woods owed him two dollars. Woods denied this, and contended that he was only one game behind, and owed Hughes but one dollar. Both parties grew angry and abusive. Hughes leaped over the bar, or counter, and a fight ensued, without weapons and without serious injury to either of the combatants. After the rencounter was over, Woods withdrew from the store of Ford, but soon returned and delivered a deadly charge from a shotgun into the head and face of Hughes, causing death almost instantaneously.

Woods testified that he took the gun into the store when he first went there, and that, upon his return, he took it up and fired to prevent Hughes from shooting him with a pistol, and that the gun and pistol were discharged simultaneously; yet the great preponderance of the testimony is in favor of the theory that the defendant went away to arm himself, and that he soon returned with his gun in hand and discharged it upon his victim, when in no danger himself. The verdict is amply sustained by the evidence.

It is contended that the record discloses several errors of law, on account of which a new trial should be granted. It is said that the trial Judge made an erroneous ruling as to the competency of E. W. Epperson, who was presented as a juror. When examined on his *voir dire* Epperson said that he had "read a detailed account of the killing" in the newspapers; that he accepted what he read as true, and from it formed an opinion as to the guilt or innocence of the accused; but that the account he read did not mention any witnesses, report any evidence, or refer to the coroner's inquest, and that he had no information about the homicide except what he had read in the newspapers; and, finally, that he was without bias or prejudice as to the defendant, and thought he could render a fair and impartial verdict solely on the law and the evidence, if he should become a juror in the case. The defendant, by his counsel, challenged the proposed juror

on account of his opinion. The Court ruled that he was competent, and the defendant, thereupon, challenged him peremptorily, and he was excused.

The defendant exhausted his other twenty-three peremptory challenges, and after that peremptorily challenged another person, who was accepted by the Court over defendant's objection. Thus, the defendant was compelled to take a juror whom he did not want, and whom he would have been able to avoid had he not been forced to spend one of his twenty-four peremptory challenges upon Epperson, whom he first challenged for cause, and whom he now insists was incompetent.

Article VI. of the Amendments to the Constitution of the United States, and Section 9 of Article I. of the Constitution of this State, declare, affirmatively, that the accused in every criminal prosecution shall enjoy the right of trial by an " impartial jury," and, by that declaration, impliedly prohibit the trial of such person by a partial jury. An impartial jury is one composed of twelve impartial men. The presence of one partial man on a jury destroys the impartiality of the body, and renders it partial. *Ellis* v. *State*, 92 Tenn., 100. Any disqualification which makes one member partial, brings the jury, as such, within the prohibition of the fundamental law, impairs one of the highest and most sacred rights of the accused, and vitiates any verdict of guilty in which the partial member may participate. A man who has prejudged the case upon its real facts is

necessarily partial, and, therefore, incompetent to sit as a juror at the trial. An opinion as to the guilt or innocence of the accused, however, is not always a disqualification. Some opinions are disqualifying and others are not, the difference in effect being due to the difference in character and origin. Those opinions which are based upon personal knowledge of the facts of the case, or upon a statement of the facts made by the witnesses themselves, or by others who have heard the witnesses relate them, disqualify; but those formed from rumor do not disqualify. *Rice* v. *State*, 1 Yer., 432; *McGowan* v. *State*, 9 Yer., 184; *Payne* v. *State*, 3 Hum., 376; *Moses* v. *State*, 10 Hum., 456; *Moses* v. *State*, 11 Hum., 232; *Alfred & Anthony* v. *State*, 2 Swan, 581; *Eason* v. *State*, 6 Bax., 466; *Conatser* v. *State*, 12 Lea, 436; *Spence* v. *State*, 15 Lea, 539.

In Eason's case, ten persons, summoned as jurors, stated that they "had formed and expressed an opinion as to the guilt or innocence of the defendant," from the reading of a newspaper which "purported to give an account of the facts of the case, but did not purport to give the testimony in the case; and that, if accepted and sworn as jurors in this case, they believed they could give a fair and impartial verdict on the law and the testimony." The trial Judge pronounced those persons competent as jurors, and the defendant challenged them peremptorily. On appeal in error, this Court reversed the ruling of the trial Judge, and declared the enactment (Ch. 51,

Acts 1870–71) on which it was based null and void, because in contravention of the constitutional right of trial by an impartial jury.     6 Bax., 467, 477, 478.

In Conatser's case, it was said that the newspaper account referred to in the Eason case was treated "as falling within the disqualifying sources of information, probably because detailed by those who professed to know the facts; and that, "whether this assumption and the adjudication that the Act of Legislature was unconstitutional are correct, are questions not now before us."     12 Lea, 442, 443.     The latter suggestion has been regarded as raising some doubt as to the correctness of the decision in Eason's case.

The Spence case lays down the following rule: "Newspaper statements, to disqualify a juror, must be such as fall within the disqualifying sources of information, and purport to be detailed by those who professed to know the facts.     Any other statement would only amount to rumor, whether in parol or printed."     15 Lea, 546.

Tested by this rule, Epperson was, undoubtedly, competent.     His information was not derived from any one of the "disqualifying sources."     He had no personal knowledge of the facts, had heard no statement of the facts by the witnesses, nor by others to whom the witnesses had related them, nor did the "detailed account of the killing," which he read in the newspapers, purport to be made "by those who professed to know the facts."     The "ac-

count " he read amounted to rumor only, and it was none the less rumor because circulated by newspapers, and not by oral deliverances. It follows that the opinion entertained by the proposed juror was based on rumor, and that he was, therefore, not disqualified by reason of that opinion. Nothing is better settled in criminal procedure in this State than that rumor is not a source of disqualification.

Objections are urged against the ruling of the Court below as to other jurors, as to the admission and rejection of testimony, and as to affidavits and motion for a new trial; but of these objections more need not be said in this opinion than that none of them are well taken, and that the rulings complained of were correctly made.

Affirm the judgment.