Ward *v.* State.

---

WARD *v.* STATE.

(*Jackson.* June 8, 1899.)

1. PLEA IN ABATEMENT. *Strictness required.*

The greatest strictness is required in pleas in abatement, and no intendment is made in their favor. They must contain a full and positive averment of all material facts. (*Post, pp.* 726, 727.)

Case cited and approved: Grove *v.* Campbell, 9 Yer., 7.

2. SAME. *Not sufficient, when.*

A plea in abatement to an indictment for forgery is fatally defective, for want of certainty in its averments, which alleges that defendant had been extradited, and was still held, under another charge of forgery pending in the same Court, without stating the name that had been forged or identifying the indictment that had been the basis of the extradition otherwise than by a general reference to the records of the Court, in which numerous indictments for forgeries were pending against defendant. (*Post, pp.* 726, 727.)

3. EXTRADITION. *Defendant not entitled to benefits of, when.*

Although the extradition of a party has been agreed upon by the two countries, still, if he is not delivered in accordance with that arrangement, but is caught by the accredited agent of this country at a port in a neighboring State, on board an American ship, sailing under an American flag, while voluntarily making his way back to this country, he is not entitled to any of the benefits of extradition. (*Post, pp.* 726, 727.)

4. CHARGE OF COURT. *Not part of record.*

The Court's charge and the requests for further instructions, though copied into the transcript, are not part of the record unless they are, by some appropriate language, made part of the bill of exceptions. (*Post, pp.* 727, 728.)

5. JUROR. *Opinion.*

Although a juror states he has no opinion in the particular case on trial, he is nevertheless incompetent if he had formed and

Ward v. State.

expressed an opinion adverse to defendant from an attentive reading of a newspaper report of the evidence delivered on a former trial of defendant on a similar charge, which included an accurate report of material evidence to be used in the pending case, introduced on the former trial to show scienter. (*Post, pp. 728–737.*)

Cases cited: Woods v. State, 99 Tenn., 186; Spence v. State, 15 Lea, 539.

6. SAME. *Same.*

And, in such case, it is error for the Court to refuse to permit counsel to examine the juror touching such newspaper report. (*Post, pp. 728–737.*)

7. SAME. *Challenges.*

This Court will reverse for the error of compelling the defendant to take an incompetent juror, over his objection and offer to challenge for cause, when it appears that defendant exhausted his full number of peremptory challenges on other objectionable jurors. (*Post, pp. 728–737.*)

---

FROM SHELBY.

---

Appeal in error from the Criminal Court of Shelby County. L. P. COOPER, J.

GEORGE B. PETERS for Ward.

Attorney-general PICKLE and M. R. PATTERSON for State.

BEARD, J. This indictment contains two counts. The first charges Ward with forging S. C. Toof's name on a check, and the second with passing this check, knowing the indorsement of Toof's name was

forgery. He was found guilty under the second count, and his term in the penitentiary fixed at five years. When called to answer the indictment, the plaintiff in error filed a plea in abatement, in which he averred that he was extradited from Spanish Honduras, under a proper process of extradition by an agent of the United States, for the "offense of forgery alleged to have been committed by him in Tennessee; that an indictment was found against him in the Criminal Court of Shelby County for the forgery for which he was extradited, as appeared from the record from said Court, which is asked to be considered as a part hereof, and the same is now pending and has never been tried." He then avers that he cannot be tried on the present indictment until he is tried for the offense for which he was extradited. After certain other pleadings, the trial Judge struck out this plea, and, we think, properly. The greatest strictness is required in pleas in abatement, and no intendment is made in their favor. "They must contain a full and positive averment of all material facts." 1 Enc. Plead. & Prac., 23; 9 Yer., 10. Tested by this well-established rule, this plea was fatally defective. It leaves blank the name of the party for forgery of which Ward was indicted, and also fails to identify in any way the indictment which was the basis of the extradition.

The plaintiff in error contents himself with referring to the "record of the Criminal Court for this

indictment, and, when found, asks that it be considered" as a part of this plea. This vital defect is sufficient answer to the error assigned to this action of the trial Judge; but another answer, equally conclusive, is furnished by the record, and that is, that plaintiff in error was never extradited in the sense of the rule invoked by his counsel. While it is true that this government did ask, on the ground of international comity, the authorities of Spanish Honduras to deliver Ward for extradition, and though those authorities indicated to our Minister resident at the capital of Spanish Honduras their willingness to surrender Ward to an accredited agent of the United States, and this agent did bring Ward back, yet the facts are that the agent found Ward outside of Spanish Honduras, at a port in a neighboring State, on board an American ship, sailing under an American flag, returning, as Ward says, "voluntarily to this country." This is clearly a case falling within the rule announced in *Ker* v. *Illinois*, rather than that enforced in *United States* v. *Rausch*, 119 U. S., 407.

Numerous errors are assigned upon the charge of the trial Judge, and upon his refusal to grant certain special requests submitted by the attorneys of the plaintiff in error. Many interesting questions have been argued at the bar growing out of these assignments, but they are not considered or determined by us, as neither charge nor request are properly brought into the bill of exceptions. At

the conclusion of the evidence used in this case
is found the usual statement, "this was all the evi-
dence in the case," and, on the next succeeding page,
begins, without any introductory clause to identify
it, what purports to be the charge, simply begin-
ning, "Gentlemen of the jury." This is not suf-
ficient. There must be something to make cer-
tain the charge as that of the Court in the par-
ticular case, such as the formula given by Judge
Caruthers in his History of a Lawsuit, "and here-
upon the Court charged the jury as follows," or
some equivalent thereof. It is the duty of the trial
Judge, in signing the bill of exceptions, to identify,
by his signature, or in some other unmistakable
form, the charge which he gives, and the special
requests he acts upon, and make them a part of
the bill of exceptions by proper indorsement, or else
see that they are embodied in the bill of exceptions,
and thus leave nothing open to conjecture on the
record.

The serious error, however, in this case arises
upon the action of the Court with regard to one
Holden, tendered as a juror. On his *voir dire* he
was examined upon the question of opinion and
prejudice, and he stated that he had been a close
reader of the *Appeal*, containing report of proceed-
ings of the former trials of Ward for forgery, and
had formed an opinion that he was guilty of felo-
niously using Mr. Toof's name, and that it was only
reasonable that he should have the same opinion

still; but that as to this case he had no opinion. The attorney of Ward then proposed to submit to the juror a copy of the *Commercial-Appeal* of the second of November, containing a report of the testimony of Mr. Toof in one of those former trials. This, upon the objection of the Attorney-general, was refused by the trial Judge, who pronounced the juror competent, and, thereupon, the prisoner, through his counsel, peremptorily challenged. Having exhausted all of his challenges, he sought to challenge two other objectionable jurors presented to him, but the trial Judge declined to permit him to do so. The plaintiff in error is in this record in a condition to complain of the action of the Court below.

The *Commercial-Appeal* presented by the prisoner's counsel contained a full report of Mr. Toof's testimony. Among other matters testified about by this witness were a series of checks given by one Pollard, to the order of S. C. Toof, on the Union & Planters' Bank, of which the check which is the basis of indictment and conviction was one, and he pronounced them all forgeries. In addition, in that case, as he does in this, he gave a reason why his name was a forgery—that at the date of this check he was in Cuba, and could not, therefore, have indorsed it.

We think, in view of the fact that Holden had stated positively that he had read closely the report of these trials in the *Appeal*, that, for the purpose

of testing his qualification to sit in this case, the prisoner's counsel was entitled to examine him on that report. In addition, it is clear the opinion which this juror had formed was a disqualifying one, and that he could not qualify himself by saying that he could give the prisoner a fair trial. An opinion formed from a personal knowledge of the facts, or from hearing witnesses state them, or from reading in any newspaper a report of the statements of actual witnesses, is a disqualifying one. *Woods* v. *State*, 15 Pickle, 186; *Spence* v. *State*, 15 Lea, 539.

Holden fell within the rule which disqualifies, and the trial Judge was in error in forcing the prisoner to challenge him peremptorily. For this reason, the cause is reversed.

### PETITION TO REHEAR.

We have been asked by the State's representatives to reconsider our former holding as to the action of the trial Judge in pronouncing one Holden a competent juror, and thus forcing the defendant to exhaust upon him one of the peremptory challenges.

In disposing of this case, we held him to be a disqualified juror upon the ground that he had formed an opinion that the accused was guilty of forgery, from what Holden characterized as a close reading by him of the reports of a former trial of Ward as they appeared in the *Commercial-Appeal.*

It is true that these reports were of a trial for another forgery than that charged in the present case; and it is also true that this would not have been a disqualifying opinion, formed, as it was, in another and a collateral case, except that the check, the alleged forgery of the name of S. C. Toof upon which is the basis of the indictment in this case, was made a subject of investigation and testimony in that case. This check was issued by one Pollard for the proceeds of a note discounted for Ward, payable to the order of Mr. Toof, on the Union & Planters' Bank, and, as claimed by the State, uttered by Ward after he had feloniously placed the name of the payee upon it. A copy of the *Commercial-Appeal* newspaper, containing a most elaborate and detailed reproduction of testimony delivered by Mr. Toof as a witness in that case, then in process of trial, was brought into the bill of exceptions, and constitutes a part of the record in this cause. The newspaper report of his testimony as to the Pollard notes and checks (for there were many of them, including the one in question) was as follows: " The State then showed the Pollard paper to witness, who said he was in Cuba when it was made. It purports to have been made in Memphis. Other Pollard notes were shown. Witness said his signature appearing on these notes was not genuine, and he got no money from them. The money on these notes was given by Pollard in the shape of checks, payable to S. C. Toof. Wit-

ness said he had indorsed none of these checks, and did not draw or receive the money on them. His signatures thereon were forged. He never saw the checks until after Ward's flight. Witness did not do business with the bank where they were cashed, but Ward did.''

That this report was accurate is shown by its complete correspondence with what Mr. Toof testified in this case as to those same notes and checks. He repeats in this what he had so positively sworn in the former case—that all the indorsements on these notes and checks of his name were forgeries—and states here, as he did there, as a confirmatory reason for his swearing as to the indorsement complained of in this case, that he was in Cuba when it was made. It is upon the reading of this testimony, and that of other witnesses to the fact, that Holden, as he confessed, had formed an opinion "adverse to the defendant"—an opinion which he says he had "expressed several times; a good many times," and that he "had this opinion still." It is certain that, if Holden had been present in court at the delivery of this testimony, or if, in conversation with him, Mr. Toof had made a similar statement to that reported in the newspaper, his opinion of Ward's guilt, formed therefrom, would have disqualified him from sitting on the jury in the present case, and this disqualification could not be removed by a mere statement that he had no opinion in this case.

While opinions resulting from rumors, whether

repeated from mouth to mouth or found in news-
papers, will not disqualify, it is otherwise as to
opinions based on the statement of witnesses to the
fact, no matter when made or how reported. As
was said in *Spence* v. *The State*, 15 Lea, 539,
"Newspaper reports, to disqualify a juror, must be
such as fall within the disqualifying sources of in-
formation and purport to be detailed by those who
professed to know the facts. Any other statement
would only amount to rumor, whether in parol or
printed." In *Woods* v. *State*, 99 Tenn., 182, it was
said: "An impartial jury is one composed of twelve
impartial men. The presence of one partial man in
a jury destroys the impartiality of the body and
makes it partial. *Ellis* v. *State*, 92 Tenn., 100.
Any disqualification which makes one member partial
brings the jury, as such, within the prohibition of
the fundamental law, impairs one of the highest and
most sacred rights of the accused, and vitiates any
verdict of guilty in which the partial member may
participate. A man who has prejudged the case
upon its real facts is necessarily partial, and, there-
fore, incompetent to sit as a juror at the trial. An
opinion as to the guilt or innocence of the accused,
however, is not always a disqualification. Those opin-
ions which are based upon personal knowledge of
the facts of the case, or upon a statement of the
facts made by the witnesses themselves, or by others
who have heard the witnesses relate them, disqualify."
And such is the holding of many of the Courts.

Among the cases announcing this rule of disqualification, are *Brown* v. *State*, 70 Ind., 576; *State* v. *Jackson*, 37 La. Ann., 768; *State* v. *Culton*, 82 Mo., 623; *Rose* v. *State* (Wash.), 26 Pac. Rep., 214; *Mabry* v. *State*, 71 Miss., 716.

But it is said that the copy of the *Commercial-Appeal* containing the report was not sufficiently identified.    The paper was offered, and the attorney of the prisoner, insisted upon submitting it to Holden for the purpose of examining . him with regard thereto.    From this, however, he was erroneously, but peremptorily, cut off by the trial Judge, upon objection by the Attorney-general.    No question was made as to the identity of the newspaper or the authenticity of the report.    No such question was suggested in the Court below, but evidently it was excluded upon the argument presented in this Court, that to permit this report to be read by the juror was to create a disqualification, when none then existed, an argument made in the teeth of the fact that the hostile opinion which had disqualified him was formed from reading the report.

Before concluding, it is not improper to say that, unless this Court is prepared to disregard its plain and unmistakable duty to see that all defendants charged with crime, however great or small, shall have a fair and impartial trial, the chief factor in which is an unprejudiced jury, the conclusion heretofore announced should be maintained.    The law allowing the challenges was not made by us, but

Ward *v.* State.

by the Legislature. The statute giving the defendant a certain number of peremptory challenges not only is a permission to him to exercise the right, but it is a mandate to us and inferior Courts, which compels their allowance. If, therefore, one charged with crime has been made to exhaust his peremptory challenges on incompetent or disqualified jurors, who should have been excluded for cause, this statutory right has been taken away from him, and, unless it is within the power of this Court to authorize such a deprivation, we cannot do so. It is not only not permitted to us to do this, but the legislative grant to him is of a right that neither this nor any other Court in this State can take away.

This Court is given jurisdiction to see, among other things, that citizens arraigned for crime are fairly tried under the law and acccording to its forms and directions. We make neither, nor have we the authority to change either. We can no more deny a defendant, guilty or innocent, one right than another. If we should have the power to say, because we might at any time think a defendant guilty, that he would be deprived of one constitutional or statutory privilege, we could say that he should be deprived of others or of all such privileges. If we have the power to say he might be forced to trial before a partly prejudiced or incompetent jury, we could say he might be tried before one wholly prejudiced or incompetent, or without a jury at all. If we could say that he could be

tried with one less challenge than the statute allows, we could say that he could be tried with two less, or without any. We have no such power, and it is mere mockery to talk of this Court denying a defendant any legal right of the character indicated, or refusing to see that he was not allowed such right in a trial below, and at the same time denominate it a revising Court, constituted wholly to see that cases and individuals are tried below under and according to the form of law.

The power to try criminals is vested in Courts solely because persons, charged as such, can there be surrounded by the safeguards of law, and have punishment meted out to them only when their guilt has been established, after an open and fair prosecution, met by an open and fair defense. It is not merely a question of guilt or innocence of the accused. If so, the proceedings of a mob, which visits swift punishment without any of the protective forms of law, upon guilty persons, are correct, because a merited result is speedily and economically reached. Organized society, however, has always agreed that this cannot be allowed, but that the accused must be properly charged, be given full opportunity and facilities for defense, have a fair trial by an impartial jury, according to fixed rules, and be convicted only when his guilt is made out beyond all reasonable doubt. The mob, by an enlightened public opinion, is condemned because of its disregard of all these. But what could be justly

Ward *v.* State.

said of Courts which would do likewise, and how much less culpable would they be if they so nearly approached the methods of a mob as to refuse the accused· any one of the vital demands essential to a fair trial, and execute or condemn according as they might will in a particular case? Compared to such conduct in Courts, mob violence is praiseworthy, for the mob, at least, has no trust to trample on or judicial oaths to violate, or judicial order and propriety to outrage. If any Court should knowingly lend itself to the punishment of any citizen not properly tried and convicted, it would fall to the level of the unlicensed mob, to the ruin of its own influence and to the shame of the country. To the honor of our Courts, superior and inferior, they have never done any such shameless work, and, as long as they remain honest, will not do so.

Petition dismissed.