Palmer v. State.

CECIL PALMER *v.* STATE.

*(Nashville.*   December Term, 1908.)

1.  **JUROR AND JURIES.  Venireman cannot be required to read newspaper articles to see whether he had previously read them.**
    Where a juror on his *voir dire* stated that he had not formed or expressed an opinion, that he was a subscriber for a certain newspaper and usually read it carefully, but did not remember reading articles about the case, and that, if he had read them, he would have formed an opinion which would require evidence to remove, the refusal of the court to permit the counsel of the accused to exhibit to the juror the articles to be read by him, to ascertain whether he had previously read them, was proper. (*Post, pp.* 471, 472.)

Case cited and distinguished:  Ward v. State, 102 Tenn., 730.

2.  **SAME.   Reading newspaper articles without forming opinion does not disqualify juror.**
    A juror who states on his *voir dire* that he has read the accounts of the crime in newspapers, but has not formed or expressed any opinion, is not disqualified.  (*Post, p.* 473.)

3.  **SAME.   Review of questions of fact as to competency of jurors as in other cases, when.**
    Whether the nature and strength of a juror's opinion are such as in law necessarily raise the presumption of partiality is a question of mixed law and fact, to be tried, as far as the facts are concerned, like any other issue of fact, and the finding of the trial court will not be set aside by the reviewing court, except for manifest error.   (*Post, p.* 476.)

Case cited and approved:   Conatser v. State, 12 Lea, 436.

121 Tenn—30

4. **SAME.** Burden is on challenger to show disqualification of juror.

The burden is upon the challenger of a juror to show the actual existence of a disqualifying opinion. (*Post, p.* 476.)

Case cited and approved: Conatser v. State, 12 Lea, 436.

5. **SAME.** Opinions formed upon personal knowledge or statements of witnesses disqualify, while those formed from rumor do not disqualify.

The opinion of a juror as to the guilt or innocence of the accused is not always a disqualification. Those opinions which are based on personal knowledge of the facts of the case, or on a statement of the facts made by witnesses themselves, or by others who have heard the witnesses relate them, disqualify; while those formed from rumor do not disqualify. (*Post, pp.* 480-482.)

Cases cited and approved: Rice v. State, 1 Yerg., 432; McGowan v. State, 9 Yerg., 184; Payne v. State, 3 Humph., 376; Moses v. State, 10 Humph., 456; Moses v. State, 11 Humph., 232; Alfred & Anthony v. State, 2 Swan, 581; Eason v. State, 6 Bax., 466; Conatser v. State, 12 Lea, 436; Spence v. State, 15 Lea, 539; Woods v. State, 99 Tenn., 182; Leach v. State, 99 Tenn., 584, 596, 597; State v. Robinson, 106 Tenn., 204, 206; Turner v. State, 111 Tenn., 593; Wilson v. State, 109 Tenn., 167, 169, 170.

6. **SAME.** Statute putting newspaper account upon equality with other sources of information, as to whether facts or rumors, is not unconstitutional.

Newspaper statements, to disqualify a juror, must be such as fall within the disqualifying sources of information, and purport to be detailed by those who profess to know the facts; and any other statement only amounts to rumor, and will not disqualify. Therefore, a statute (Acts 1899, ch. 383) providing that a juror who has formed an opinion upon newspaper statements is not disqualified where he testified that he believes he can fairly and impartially render a verdict in accordance with the law and evidence, and the court is satisfied of the truth of such statement, when construed in connection with the foregoing rule, is not unconstitutional. (*Post, pp.* 481-488.)

Palmer v. State.

Acts cited and construed:   Acts 1899, ch. 383.

Cases cited and approved:   Spence v. State, 15 Lea, 539, 546;
   Woods v. State, 99 Tenn., 182; Leach v. State, 99 Tenn., 584;
   State v. Robinson, 106 Tenn., 204, 206; Morrison v. State, unre-
   ported; Turner v. State, 111 Tenn., 593; Wilson v. State, 109
   Tenn., 167, 169, 170.

7.  **SAME.**  Opinion upon rumor, where juror can do impartial
   justice, does not disqualify him, when.

Where a juror, on his *voir dire*, testified that he had formed an
   opinion based upon mere rumor; that his opinion was a fixed-
   one which would require evidence to remove; that he had
   talked generally about the matter, but did not know whether he
   had talked with witnesses or not, but had accepted the matter
   as a mere rumor, and that he had read a certain newspaper;
   that he could as juror do fair and impartial justice between
   the State and the defendant, such a juror is not disqualified,
   but is competent.   (*Post, pp.* 473-488.)

Cases cited and approved:   See cases cited under the next pre-
   ceding headnote; and numerous cases cited generally, without
   any particular application, in the opinion, pages 474, 475.

8.  **RAPE.**  Refusal to charge as to assault with intent to commit
   rape is proper where accused was guilty of rape or nothing.

Where, in a trial under an indictment for rape, the accused was,
   under the evidence, either guilty of the crime of rape or of noth-
   ing, the refusal of the trial judge to instruct the jury upon the
   subject of assault with intent to commit the rape was proper.
   (*Post, p.* 488.)

Cases cited and approved:   Powers v. State, 117 Tenn., 363, 372;
   Frazier v. State, 117 Tenn., 430, 441.

9.  **CRIMINAL PROCEDURE.**  Motion in arrest of judgment is
   a waiver of a motion for a new trial.

A motion in arrest of judgment and new trial cannot be made to-
   gether and at the same time, because a motion in arrest of judg-
   ment is a waiver of a motion for new trial.   (*Post, pp.* 489,
   490.)

Cases cited and approved:   Freeman v. Railroad, 107 Tenn., 340;
   Hall v. State, 110 Tenn., 365, 368.

Palmer v. State.

**10. SAME.** Same.  Waiver of motion for new trial confines errors, to face of record.

The legal effect of the waiver of the motion for a new trial is that the court is confined to error assigned upon the face of the record.  (*Post, pp.* 489-490.)

Case cited and approved:  Hall v. State, 110 Tenn., 365, 368.

**11. INDICTMENT.**  Trial judge may, but is not bound to quash, for defects.

The trial judge may perhaps, on his own motion, quash an indictment for defects therein, but he is not bound to quash it, even on motion of the accused.  (*Post, p.* 490.)

Cases cited and approved:  Jetton v. State, Meigs, 192; State v. Willis, 3 Head, 157.

**12. SAME.**  Objections must be made in lower court.

Objections to the indictment must be made in the lower court. (*Post, p.* 490.)

Cases cited and approved:  Rodes v. State, 10 Lea, 414; Glidewell v. State, 15 Lea, 135; Luttrell v. State, 85 Tenn., 232, 237.

**13. SAME.**  Same.  Objections to form are waived by going to trial.

Objections to the form of the indictment are generally waived by going to trial without calling the attention of the trial judge to them.  (*Post, p.* 490.)

Cases cited and approved:  Stevenson v. State, 5 Bax., 683; Scruggs v. State, 7 Bax., 38; Forrest v. State, 13 Lea, 106.

**14. CRIMINAL PROCEDURE.**  Motion in arrest must rest on record.

A motion in arrest of judgment must rest on matter of record. (*Post, p.* 490.)

Cases cited and approved:  State v. Rogers, 6 Bax., 563; King v. State, 91 Tenn., 649.

Palmer v. State.

**15. SAME.** Motion in arrest must state the specific grounds.

A motion in arrest of judgment must state specifically the grounds on which it is based. (*Post, pp.* 490-492.)

Cases cited and approved:   State v. Steele, 3 Heisk., 135; Hall v. State, 110 Tenn., 365.

**16. INDICTMENT.** For rape according to statutory definition, without charging that the female was "ravished", is sufficient, when.

An indictment, averring that the accused on a certain date feloniously did have carnal knowledge of a certain female, forcibly and against her will, charges the crime of rape, as defined by our statute (Shannon's Code, sec. 6451), though it does not charge that the accused "ravished" the female. The word "ravished" implies nothing more than that the act was done forcibly and against the will of the woman. (*Post, pp.* 492-495.)

Code cited and construed:   Secs. 6451, 7077, 7080, 7083 (S.); Secs. 5361, 5943, 5946, 5949 (M. & V.); secs. 4610, 5114, 5117, 5120 (T. & S. and 1858).

Cases cited and approved:   Wilkey v. Commonwealth, 104 Ky., 325; Tway v. State, 7 Wyo., 75, 78, 79; Harmon v. Commonwealth, 12 Serg. & R. (Pa.), 69; O'Connell v. State, 6 Minn., 279, 284, 285 (Gil., 190); Williams v. State, 1 Tex. Cr. App., 90, 92, 93; Gibson v. State, 17 Tex. Cr. App., 574; Fields v. State, 39 Tex. Cr. Rep., 488; Leoni v. State, 44 Ala., 110; Jackson v. State, 114 Ga., 861.

---

FROM WILSON.

---

Appeal from the Circuit Court of Wilson County.— JOHN E. RICHARDSON, Judge.

TURNEY & TURNEY and FRANK MCMILLAN, for Palmer.

ATTORNEY-GENERAL CATES, for State.

---

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error was indicted and convicted in the circuit court of Wilson county for the crime of rape, committed upon the person of Mrs. Sophronia J. Yates, and was sentenced to be hanged. He thereupon appealed to this court and assigned errors. We have fully considered the evidence, and all of the errors assigned, in a memorandum opinion filed with record, and we do not deem it necessary, in the present opinion, to refer more particularly to the facts, and to certain of the errors assigned, than in the manner just mentioned. In this opinion, prepared for publication, we shall advert to only two or three matters of law which arose upon the hearing.

It is insisted that the trial judge erred in passing to the counsel for the prisoner the following veniremen as competent jurors, thereby rendering it necessary for the prisoner to challenge them peremptorily, viz.: J. V. Nettles, J. S. Hamilton, Albert Hawkins, J. S. Steed, R. W. Lannom, P. B. Smith, J. B. Young, Lea Ballinger, Jim Heran, R. B. Malone, Cates Bingham, E. P. Mitchell, Sam Lannis, and H. H. Smith. The latter was the twelfth juror, who was tendered to the prisoner's counsel after they had exhausted all of his peremptory challenges.

Most of the veniremen referred to stand upon the same ground, and can be disposed of together; but there are peculiarities about one or two of them, and they will be mentioned specially.

J. V. Nettles stated on his *voir dire* that he had not formed or expressed an opinion. Upon further examination he stated that he was a subscriber to the Lebanon Banner, and had been since, and prior to, July 4th; that he usually read the paper carefully, but did not remember reading articles about this matter; that, if he had read the Banner news items and editorials, he would have formed an opinion which would require evidence to remove. The bill of exceptions continues: "The defendant offered to show the news items and editorials of the Banner, marked Exhibits D, E, and F, to the defendant's affidavits for a continuance, to the venireman, asking the question if he had read them. The court refused to allow the venireman to read the articles, upon the ground that, if they were not disqualifying, they were not material, and, if disqualifying, it would not be proper now to disqualify a juror."

It is insisted that the trial judge erred in not permitting the counsel for the prisoner to exhibit to the proposed person the articles referred to and have him read them. We do not think there was any error in this action of the court. It is clear, from the examination of the venireman, that he had no opinion whatever as to the guilt or innocence of the prisoner. It would have been an idle thing to have him read a newspaper

article in order to see if he would form an opinion. It is said the court held in *Ward* v. *State,* 102 Tenn., 730, 52 S. W., 996, that it was error in the trial court not to permit such a thing to be done. The facts in that case were far different from those in the present case. In *Ward's Case* it appeared that the prisoner was on trial for one of a series of forgeries of the same character; that there had been a former trial of one of these cases, in which the particular transaction which was the subject of the case then on trial had been testified to by the leading witness for the prosecution; that his evidence had been reported in a newspaper, and that this newspaper had been read by the venireman; and that from the facts so stated by the witness he had formed an opinion. The court held, under these facts, that the prisoner's counsel should have been permitted to exhibit the newspaper to the venireman and examine him thereon; that is, it was held that the counsel for the prisoner had the right to examine the venireman touching the very newspaper report which the venireman said he had read, and from which he said he had formed an opinion, and which evidence related to the particular transaction which was the subject of the case for which the venireman was being examined as a prospective juror. In the present case, as already stated, the venireman testified that he had formed no opinion and did not remember that he had ever read the article in the paper.

J. S. Steed and several others of the persons named stated that they had read the accounts of the crime in both Lebanon papers, but had not formed or expressed any opinion. Of course, they were not disqualified.

Cates Bingham and several others of the veniremen mentioned testified that they had formed an opinion, but that it was based merely on rumor; that it would require evidence to remove such an opinion, but that they could go into the jury box, and do fair and impartial justice between the State and the prisoner, and decide the case upon the law and the evidence. This was the case, also, of H. H. Smith, who went upon the jury as the twelfth juror after the prisoner had exhausted all of his challenges.

The case of R. B. Malone is thus stated in the bill of exceptions:

"R. B. Malone otherwise qualified, but said he had formed an opinion; that it was based on mere rumor; that he could go into the jury box, and do fair and impartial justice between the State and the defendant, and would decide the case upon the law and the evidence; that his opinion was a fixed one, which would require evidence to remove; that he had talked generally about the matter, but did not know whether he had talked with witnesses or not, but had accepted or received it as mere rumor; that he read the Lebanon Democrat."

The determination of the question arising as to the two veniremen last mentioned requires a reference to our cases.

We have quite a number of cases upon the subject of the competency of jurors.

The following may be mentioned as cases wherein it clearly appeared that the veniremen had been disqualified by the formation of an opinion: *Rice* v. *State,* 1 Yerg., 432; *Troxdale* v. *State,* 9 Humph., 422; *Riddle* v. *State,* 3 Heisk., 401; *State* v. *Collie,* 3 Shan. Tenn. Cas., 803, 807; *Carter* v. *State,* 9 Lea, 440; *Cartwright* v. *State,* 12 Lea, 620; *Hoard & Fite* v. *State,* 15 Lea, 318; *Ward* v. *State,* 102 Tenn., 724, 52 S. W., 996; *Turner* v. *State,* 111 Tenn., 593, 69 S. W., 774.

The following cases stand upon somewhat peculiar grounds: *Henry* v. *State,* 4 Humph., 270; *Moses* v. *State,* 10 Humph., 456; *Norfleet* v. *State,* 4 Sneed, 341, 343, 344.

There are several cases concerning the effect of an opinion formed on rumor. These are *Howerton.* v. *State,* Meigs, 262; *Payne* v. *State,* 3 Humph., 375; *Moses* v. *State,* 11 Humph., 232; *Brakefield* v. *State,* 1 Sneed, 215, 218, 219; *McLean* v. *State,* 1 Shan. Tenn. Cas., 478, 483, 484; *Johnson* v. *State,* 11 Lea, 47; *Spence* v. *State,* 15 Lea, 539, 543-547; *Woods* v. *State,* 99 Tenn., 182, 41 S. W., 811; *Leach* v. *State,* 99 Tenn., 584, 597, 42 S. W., 195; *State* v. *Robinson,* 106 Tenn., 204, 206, 61 S. W., 65. There is also the case of *Watkins* v. *State,* 1 Leg. Rep., 10, 2 Shan. Tenn. Cas., 206, which

is out of line with the other cases upon the same subject.

We have also several cases which discuss the question of the competency of jurors in respect of matters of opinion generally. These are *McGowan* v. *State,* 9 Yerg., 184; *Alfred & Anthony* v. *State,* 2 Swan, 581; *Eason* v. *State,* 6 Baxt., 466; *Conatser* v. *State,* 12 Lea, 436; *Spence* v. *State,* supra; *Woods* v. *State,* supra; *Wilson* v. *State,* 109 Tenn., 167, 169, 170, 70 S. W., 57.

There is some conflict in the early cases. The dividing line between the early and later cases may be placed with *Conatser* v. *State,* supra, opinion by Mr. Justice Cooper, in which that great judge discusses the prior cases, and with infinite tact and delicacy indicates the transition from the earlier to the later view. The beginning of the modern doctrine may be placed with the case of *Spence* v. *State,* supra, in an opinion by the same eminent judge. That case contains a redaction of the *Conatser Case.* We shall not discuss or endeavor to reconcile the conflict between the present and the early doctrine, but shall begin our statement of the present doctrine with the *Spence Case.*

In this latter case the court said:

"The first error relied on for reversal is in the action of the court in pronouncing W. J. Taylor a competent juror. After the defendant had exhausted all his challenges, Taylor was presented as a juror. He stated on his *voir dire* that he had an opinion, formed from reading the newspapers and from talk in the

neighborhood; that it would require evidence to remove
this opinion; he had heard Spence had killed Wheat
about a settlement, and that was all he had heard or
read; did not know either of them; that, if taken on the
jury, he would try the case on the evidence as sworn to
by the witnesses, and would not try the case on what
he had read or heard, and could do fair and impartial
justice between the State and the defendant; that he
did not remember having read the testimony give be-
for the coroner's jury.

"In *Conatser* v. *State*, 12 Lea, 436, we had occasion
to review the decisions of this court upon the compe-
tency of jurors in criminal cases, and to ascertain the
general principles which might be considered as set-
tled thereby. We found that the question whether the
nature and strength of a juror's opinion are such as
in law necessarily raise the presumption of partiality,
is one of mixed law and fact, to be tried, as far as
the facts are concerned, like any other issue of that
character, upon the evidence, and that the finding of
the trial court, before whom the juror gave his testi-
mony in person, would not be set aside by the review-
ing court, except for manifest error. The burden is
upon the challenger to show the actual existence of a
disqualifying opinion. We held that if the opinion of
the juror go only to the fact that a person has been
killed, and that the defendant killed him with a par-
ticular instrument, in a case where these facts could
not be disputed, he would not necessarily have a dis-

Palmer v. State.

qualifying opinion. We also held that, if the opinion of a juror be clearly. such as disqualifies him, no inquiry is permissible whether, notwthstanding his opinion, he will be governed by the evidence alone, but that it is otherwise when the opinion is not based upon evidence or information that disqualifies, and that the law does not regard what the juror may call an opinion as an opinion at all, unless based upon knowledge or reliable information of facts, and the state of the mind of the juror in such case as to what weight he would give to the evidence to be introduced becomes an important element in ascertaining his competency. As a result we. held that a juror was competent in the particular case who had heard persons say that the prisoner had killed the deceased with a hoe at a road working, who did not know whether these persons were witnesses or not, nor whether they had heard the evidence or not, who had the same opinion still, which was a fixed opinion from rumor, and that it would take evidence favorable to the prisoner to remove it, but that he could disregard that opinion, and be governed in his verdict by the evidence.

"In the case before us it is conceded that, if the juror had merely said that he heard that the defendant had killed Wheat, he would, upon the statements on his *voir dire,* have come within the rulings of the *Conatser Case.* But it .is argued that the additional statement that the killing was 'about a settlement' took the case out of the rule. The fact that the juror had

heard that the defendant had killed the deceased with a particular instrument, if undisputed, is, as we have held, immaterial; and it is difficult to see how the additional fact of the cause of the killing, if equally undisputed, could change the result, for the cause would not ordinarily fix the blame on either party, or show the nature of the offense. That is certainly so in the present case. And the testimony, as we have seen, is that the defendant himself, at the time and always, said that the difficulty originated in his wanting to get a settlement from the deceased. But the answer to the argument is that what the witness had heard and read was mere rumor. He had not read the testimony given before the coroner's jury, nor, so far as appears, any detailed statement. What he had read and heard was merely that defendant had killed deceased about a settlement, facts about which there was no dispute. Newspaper statements, to disqualify a juror, must be such as fall within the disqualifying sources of information, and purport to be detailed by those who professed to know the facts. Any other statement would only amount to rumor, and it can only be rumor, whether in parol or printed. If the opinion of the juror was founded on rumor alone, then the case falls exactly within the ruling of *Conatser* v. *State.*" 15 Lea, 543-546.

In *Woods* v. *State,* 99 Tenn., 182, 41 S. W., 811, the court said, upon the same subject:

"It is contended that the record discloses several errors of law, on account of which a new trial should be granted. It is said that the trial judge made an erroneous ruling as to the competency of E. W. Epperson, who was presented as a juror. When examined on his *voir dire,* Epperson said that he had 'read a detailed account of the killing' in the newspapers; that he accepted what he read as true, and from it formed an opinion as to the guilt or innocence of the accused; but that the account he read did not mention any witnesses, report any evidence, or refer to the coroner's inquest, and that he had no information about the homicide, except what he had read in the newspapers; and, finally, that he was without bias or prejudice as to the defendant, and thought he could render a fair and impartial verdict solely on the law and the evidence, if he should become a juror in the case. The defendant, by his counsel, challenged the proposed juror on account of his opinion. The court ruled that he was competent, and the defendant thereupon challenged him peremptorily, and he was excused.

"The defendant exhausted his other twenty-three peremptory challenges, and after that peremptorily challenged another person, who was accepted by the court over defendant's objection. Thus the defendant was compelled to take a juror whom he did not want, and whom he would have been able to avoid, had he not been forced to spend one of his twenty-four peremptory challenges upon Epperson, whom he first challenged for

cause, and whom he now insists was incompetent. . . .
A man who has prejudged the case upon its real facts
is necessarily partial, and therefore incompetent to sit
as a juror at the trial. An opinion as to the guilt or
innocence of the accused, however, is not always a dis-
qualification.    Some opinions are disqualifying, and
others are not; the difference in effect being due to the
difference in character and origin. Those opinions
which are based upon personal knowledge of the facts
of the case, or upon a statement of the facts made by the
witnesses themselves, or by others who have heard the
witnesses relate them, disqualify; but those formed
from rumor do not disqualify. *Rice* v. *State,* 1 Yerg.,
432; *McGowan* v. *State,* 9 Yerg., 184; *Payne* v. *State,*
3 Humph., 376; *Moses* v. *State,* 10 Humph., 456; *Moses*
v. *State,* 11 Humph., 232; *Alfred & Anthony* v. *State,*
2 Swan, 581; *Eason* v. *State,* 6 Baxt., 466; *Conatser* v.
*State,* 12 Lea, 436; *Spence* v. *State,* 15 Lea, 539.

"In *Eason's Case,* ten persons, summoned as jurors,
stated that they 'had formed and expressed an opinion
as to the guilt or innocence of the defendant,' from the
reading of a newspaper which 'purported to give an
account of the facts of the case, but did not purport to
give the testimony in the case, and that, if accepted and
sworn as jurors in this case, they believed they could
give a fair and impartial verdict on the law and the
testimony.' The trial judge pronounced those persons
competent as jurors, and the defendant challenged them
peremptorily. On appeal in error, this court reversed

Palmer v. State.

the ruling of the trial judge, and declared the enactment (chapter 51, p. 78, Acts 1870-71) on which it was based null and void, because in contravention of the constitutional right of trial by an impartial jury.    6 Baxt., 467, 477, 478.

"In *Conatser's Case* it was said that the newspaper account referred to in the *Eason Case* was treated 'as falling within the disqualifying sources of information, probably because detailed by those who professed to know the facts,' and that 'whether this assumption and the adjudication that the act of legislature was unconstitutional are correct are questions not now before us.' 12 Lea, 442, 443.    The latter suggestion has been regarded as raising some doubt as to the correctness of the decision in *Eason's Case.*

"The *Spencer Case* lays down the following rule: 'Newspaper statements, to disqualify a juror, must be such as fall within the disqualifying sources of information, and purport to be detailed by those who professed to know the facts.    Any other statement would only amount to rumor, whether in parol or printed.'    15 Lea, 546.

"Tested by this rule, Epperson was, undoubtedly, competent.    His information was not derived from any one of the 'disqualifying sources.'    He had no personal knowledege of the facts, had heard no statement of the facts by the witnesses, nor by others to whom the witnesses had related them, nor did the 'detailed account

of the killing,' which he read in the newspapers, pur-
port to be made 'by those who professed to know the
facts.' The 'account' he read amounted to rumor only,
and it was none the less rumor because circulated by
newspapers, and not by oral deliverance. It follows
that the opinion entertained by the proposed juror was
based on rumor, and that he was, therefore, not dis-
qualified by reason of that opinion. Nothing is better
settled in criminal procedure in this State than that
rumor is not a source of disqualification."

To the same effect, *Leach* v. *State,* 99 Tenn., 584, 596,
597, 42 S. W., 195.

In *State* v. *Robinson,* 106 Tenn., 204, 206, 207, 61 S.
W., 65, is is said:

"It is objected that Howard Smith and J. R. Robbins,
two of the jurors who tried the defendant, were incom-
petent to act as such. These gentlemen, on their *voir
dire,* stated that they had formed and expressed opinion
as to the merits of the case and the guilt of the de-
fendant; that this opinion was based upon information
which they relied upon and believed to be true; that
they had read the newspaper accounts of the killing,
but that they did not know that those from whom they
obtained their information knew or professed to know
the circumstances of the case; that they had a fixed
opinion, based upon this information, which they re-
garded as true and reliable, and one which it would re-
quire proof to remove; that they could, however, try
the case according to the law and evidence, and give

Palmer v. State.

the defendant a fair and impartial trial. The parties were held by the court to be competent, were accepted by the State, but challenged by the defense, and were placed on the jury over the protest of the defendant.

"The defendant exhausted all his challenges in making up the jury, and was forced to accept a juror over his peremptory challenge. This is assigned as error.

"We are of opinion that under the ruling of this court in *Woods* v. *State,* 99 Tenn., 182, 41 S. W., 811, there was no error in accepting these parties as competent jurors. They could not say that the accounts which they had heard and read were given by persons who knew or professed to know the facts, and they stated that they could render a verdict impartially upon the evidence, notwithstanding these preconceived opinions, which were formed, as we think, from rumor, and not from any account by any one purporting or assuming to know or state the facts. We think the statements they had read and heard of the facts must be treated as rumor and do not disqualify the persons from acting as jurors."

At the same term of the court, in the case of *Morrison* v. *State,* from Robertson county, an opinion was delivered by the present chief justice; but it has been lost, and the record also has been mislaid. We have had recourse, however, to the original bill of exceptions, and the action of the lower court, which was approved in that case, is thus disclosed:

"John Durrett testified on his *voir dire*. That he had a fixed opinion as to the guilt or innocence of the defendant, founded upon reading an account of the killing in the newspaper, and that it would require proof to remove said opinion. The court then asked the said John Durrett if he believed that he could fairly and impartially render a verdict in this case in accordance with the law and evidence. He replied that he thought he could. The court held the said John Durrett a competent juror. The defendant excepted to the action of the court in holding the said John Durrett as a competent juror. The State passed the said John Durrett. The defendant challanged him for cause. The court overruled and disallowed the challange for cause, to which the defendant excepted. The defendant then and there challenged said John Durrett peremptorily.

"J. M. Birdwell was tendered as a competent juror. He also stated that he had a fixed opinion as to the guilt or innocence of the defendant, which was formed from reading a detailed account of the shooting in the Robertson County News, a newspaper published at Springfield, soon after it occurred, and that it would take proof to remove said opinion. The court then asked J. M. Birdwell if he believed that he could fairly and impartially render a verdict in this case in accordance with the law and evidence. He replied that he thought he could. The court held J. M. Birdwell competent as a juror. The State passed him. The defendant challenged him for cause. The court overruled and disal-

lowed said challenge, to which the defendant excepted. The defendant then peremptorily challenged the said J. M. Birdwell.

"John Crosswy was tendered as a competent juror. He also stated that he had a fixed opinion as to the guilt or innocence of the defendant, which was formed by reading an account of the killing in the Robertson County News soon after it occurred, and that it would. take proof to remove said opinion. The court then asked John Crosswy if he believed he could fairly and impartially render a verdict in this case in accordance with the law and evidence. He replied that he thought he could. The court held John Crosswy competent as a juror. The State passed him. The defendant challenged him for cause. The court disallowed and overruled said challenge for cause, to which the defendant then and there excepted. The defendant peremptorily challenged John Crosswy."

This court held that all of the foregoing persons tendered as jurors were competent, and also held that chapter 383. p. 891, of the Acts of 1899, was constitutional. That act reads:

"That hereafter, in the trial of any criminal case, the fact that a person called as a juror has formed an opinion or impression based upon newspaper statements shall not disqualify him to serve as a juror, if he shall, upon oath, swear that he believes he can fairly and impartially render a verdict therein in accordance with the law and evidence, and the court shall be satisfied of the truth of such statement."

This statute must, however, be construed in connection with the cases already quoted from, and those which are to follow, as to the kind of newspaper statements referred to.

The next case is *Turner* v. *State,* decided at the April term, 1902, and reported in the addendum to 111 Tenn., at page 593, 69 S. W., 774. In that case the court held that the juror was incomptent because, said the court, "it will be observed that during the course of his examination the juror stated he conversed with parties who had conversed with witnesses; that he accepted what they said as being the facts in the case; that he does not recall their names, but the names of the witnesses were given him in those conversations; that he has an opinion well grounded and fixed, etc.; that his opinion was unfavorable to the defendant; and that it will require evidence to remove it."

The next and last case in our reports is *Wilson* v. *State,* 109 Tenn., 167, 169, 170, 70 S. W., 57, which was decided at the September term, 1902. In that case it appeared that the plaintiff in error had been convicted of murder in the second degree, and had been sentenced to the penitentiary and appealed. It was urged in this court that he had not had a trial before a fair and impartial jury. Said the court upon this subject:

"The specific objection is over the fact that Richard Rider, W. H. Farmer, and four others, whose names are not given, were not competent and impartial, in that they stated, when examined on their *voir dire,* that they

had formed and expressed opinions touching the guilt or innocence of the defendant. They stated that they had heard a great deal about the case, lived in the locality of the killing, had heard persons state how the killing occurred, but did not know whether the persons who made the statements knew of the facts or not; that they had formed their opinions from these statements, but that, if selected as jurors, they could and would wholly disregard these opinions, and try the case alone on the law and evidence, and do equal and exact justice between the State and the defendant; that they would, however, go into the jury box with their opinions; and that it would take evidence to remove them. These parties were objected to as incompetent and disqualified for jury service, and were offered to be challenged for cause; but the court held them competent, and, being acceptable to the State, defendant was forced to peremptorily challenge them, and in this way exhausted his challenges, and was refused any others on that ground. Defendant, having exhausted all his challenges before the jury was made up, was forced to accept as a juror one C. A. Guy, whom he desired to challenge, and who was selected and impaneled as a juror over his protest and challenge.

"This matter has been often before this court, and its latest deliverance upon the questions involved is embodied in the case of *Turner* v. *State*, 111 Tenn., 593, 69 S. W., 778, 779, where the cases are reviewed and commented on at some length. It is only necessary to

say that the opinions which disqualify a person from being a juror are such as are formed from the personal knowledge of the juror, the statements of witnesses, or of those who have heard the witnesses, and who repeat what they have heard, or from published accounts of the statements of witnesses; and opinions formed from other sources are based upon rumor, and do not disqualify. *Woods* v. *State,* 99 Tenn., 187, 41 S. W., 811."

It is unnecessary that we should add anything to what is said in the foregoing opinions from which we have quoted. Those opinions, in the excerpts which we have quoted, state fully and clearly the latest views of the court in this State upon the vexed subject of which they treat. It is manifest, that, under the principles that are thus laid down, none of the jurors objected to were incompetent. The opinions of all of them must be treated as based on rumor.

It is insisted that the court below erred in failing to instruct the jury upon the subject of assault with intent to commit the specific crime of which the plaintiff in error was convicted. We do not think there was any error in this respect. There was no evidence upon which such a charge could have been based. The plaintiff in error was guilty of the charge of which he was convicted, or of nothing. *Powers* v. *State,* 117 Tenn., 363, 372, 97 S. W., 815, *Frazier* v. *State,* 117 Tenn., 430, 441, 100 S. W., 94.

We have thus gone over the various exceptions made, just as if these matters were properly presented to us

upon overruling a motion for a new trial in the lower court. However, in the present case, it appears that the motion for a new trial was made in connection with the motion in arrest of judgment in the following form, as shown on the record, at page 7, viz.: "Defendant by attorneys thereupon moved in arrest of judgment, and for a new trial, which was overruled by the court."

In *Freeman* v. *Railroad*, 107 Tenn., 340, 64 S. W., 1, it is said: "It appears that its motions for a new trial and in arrest of judgment were made at the same time and in the same motion. A motion for a new trial and in arrest of judgment cannot be made together and at the same time, and a motion in arrest of judgment is a waiver of a motion for a new trial." In the later case of *Hall* v. *State*, 110 Tenn., 365, 75 S. W., 716, it appeared that the motion was precisely the same as here. It is quoted on page 368 of 110 Tenn., and page 717 of 75 S. W.: "Comes the defendant and moves the court in arrest of judgment and for a new trial, which motion being heard is overruled." The court said: "Evidently there was a single motion, embracing two distinct, if not incongruous, matters of procedure, and invoking the judgment of the trial judge upon it. In addition, even if this was construed as an equivalent of recital of the two motions, yet it could not be presumed that they were disposed of in proper order; for, from the statement of the record just given, we think the necessary inference is that the motion in arrest was first made, and, being so made, was disposed of first. The legal effect

of the waiver of the motion for new trial is that the court is confined to error assigned upon the face of the record."

It is insisted that there was error upon the face of the record, because the indictment was defective; but there was no motion to quash made in the court below. The trial judge may perhaps quash on his own motion, but he is not bound to quash, even on motion of the prisoner. *Jetton* v. *State*, Meigs, 192; *State* v. *Willis*, 3 Head, 157.

Objections to the indictment must be made in the lower court. *Glidewell* v. *State*, 15 Lea, 135; *Rodes* v. *State*, 10 Lea, 414; *Luttrell* v. *State*, 85 Tenn., 232, 237, 1 S. W., 886, 4 Am. St. Rep., 760.

Objections to the form of the indictment are generally waived by going to trial without calling the attention of the trial judge to them. *Stevenson* v. *State*, 5 Baxt., 683; *Forrest* v. *State*, 13 Lea, 106; *Scruggs* v. *State*, 7 Baxt., 38.

There was, however, in the lower court, a motion in arrest of judgment. This motion must rest on matter of record. *King* v. *State*, 91 Tenn., 649, 20 S. W., 169; *State* v. *Rogers*, 6 Baxt., 563. Such motion is ineffective, unless it states specifically the grounds on which it is based. *State* v. *Steele*, 3 Heisk., 135; *Hall* v. *State*, 110 Tenn., 365, 75 S. W., 716. In the first of these cases, it is said: "The record does not disclose for what reason the judgment in this case was arrested. The motion in arrest is general, and specifies nothing. It

is certainly the better, if not the only correct, practice, in civil as well as criminal cases, formally to assign reasons in arrest of judgment upon the record in support of the motion in arrest, so that the attention of the court in the first instance may be at once directed to the alleged defect in the proceedings, and that the public, through all time, may, upon examination of the record, be informed as to the ground of its action. . . . The propriety, not to say necessity, of this practice, is more apparent when the cause is to be considered by a revising tribunal, whose attention should be directed at once to the reasons in arrest, assigned of record, instead of being compelled to make a critical, and often fruitless, examination of the record to find out the supposed defects."

In *Hall* v. *State*, it is said upon this subject: "The motion in arrest should state concisely the defects complained of, or the ruling of the lower court upon such motion, it is held, cannot be reviewed on appeal. . . . A motion in arrest is much in the nature of a demurrer, which goes to defects upon the face of the pleadings, and this common-law ruling requiring the motion in arrest to point out to the trial court matters complained of is in accordance with the spirit of our legislation as to demurrers. The general demurrer prevailed for many years in this State; but it was finally condemned as a vicious practice, in that it laid a trap for trial courts and for adversary counsel. So the Code of 1858 abolished it, and provided that the demurrer must specify the

defects relied on. We think a general motion in arrest is equally objectionable, and should be discountenanced."

However, even if the objection made in this court to the indictment had been made in the court below, in never so specific a form, it must have been held of no avail.

The indictment reads:

"State of Tennessee, Wilson County.   September Term,
    Circuit Court, 1908.

"The grand jurors for the State and county aforesaid, on their oath, present that Cecil Palmer, on the ——day of July, 1908, feloniously did have unlawful carnal knowledge of Sophronia J. Yates, a female, forcibly and against her will, and against the peace and dignity of the State.

                    "WALTER S. FAULKNER, Attorney General."

The objection now offered is that the indictment does not use the word "ravished"—does not charge that the prisoner "ravished" the female. It is insisted that this word was essential at the common law, and that an indictment without it is fatally defective.

The point is not well taken. Our statute defines rape as follows: "Rape is the unlawful carnal knowledge of a woman forcibly and against her will." Shannon's Code, section 6451. The word "ravish" implies nothing more than that the act was done forcibly and against the will of the woman. *Wilkey* v. *Commonwealth*, 104

Palmer v. State.

Ky., 325, 47 S. W., 219, 220; *Tway* v. *State*, 7 Wyo., 75, 78, 79, 50 Pac., 188; *Harmon* v. *Com.*, 12 Serg., & R. (Pa.), 69; *O'Connell* v. *State*, 6 Minn., 279, 284, 285 (Gil., 190); *Williams* v. *State*, 1 Tex. Cr. App., 90, 92, 93, 28 Am. Rep., 399; *Gibson* v. *State*, 17 Tex. Cr. App., 574; *Fields* v. *State*, 39 Tex. Cr. R., 488, 46 S. W., 418; *Leoni* v. *State*, 44 Ala., 110; *Jackson* v. *State*, 114 Ga., 861; 40 S. E., 989. In *Tway* v. *State*, it is said: "It is contended by plaintiff in error that the information is insufficient because the word 'ravish' is not used in describing the offense. The alleged defect being in the manner in which the offense is charged, the objection should have been made by a motion to quash in the court below. The attention of the district court was not called to it in any way, and the question is not properly before us for consideration. But the information is in the language of the statute, and is sufficient. Bishop says: 'There are commonly employed, in setting out some crimes, certain technical words for which it is believed there are no substitutes.' And he mentions, as one of them, 'ravish' in the indictment for rape. He adds: 'So the doctrine is usually stated in the books; but the reason for it in most cases is that either the offense is now, or it was in its origin, statutory, and the statutory term must be employed to identify it; such being the rule for all indictments on statutes. For example, murder, as distinguished from manslaughter, is a statutory crime, and hence the necessity for the technical words just mentioned. Under modern statutes, un-

der different language from the old common-law and statutory definitions, the use of the same technical words is not always essential.' 1 Bish. Crim. Prac., section 335. And he states (volume 2, section 953): 'Ravish' is indispensable in the common-law indictment, because it is in the statute of Westminster II. The word does not occur in the definition in our statute, and therefore there is no necessity for its use in describing the offense." 7 Wyo., 78, 79, 50 Pac., 188. Neither does the word occur in the definition in our statute, and there is no necessity for its use in describing the offense. Moreover, our Code provides that, "in all cases where the common-law prescribes particular and technical language to describe an offense punished by this Code, it is sufficient to describe the offense according to the general rules laid down in this chapter." Shannon's Code, section 7083. That is, "the act or omission charged as the offense shall be stated with such degree of certainty as to enable the court to pronounce judgment upon a conviction according to the right of the case" (Shannon's Code, section 7080), and "the statement of facts constituting the offense . . . shall be in ordinary and concise language without prolixity or repetition" (Shannon's Code, section 7077). Our statutory definition of the offense contains every element necessary to constitute the crime of rape. In drawing an indictment under it, it is only necessary to add, as was done in the present case, the circumstances of time and person. The man who is

Palmer v. State.

charged with having unlawful carnal knowledge of a particular woman (at a time stated) forcibly and against her will is charged with the crime of rape. The use of the word "ravish," along with the words contained in the statute, would add nothing to the charge. It would be mere surplusage, even with the full meaning accorded to it in the authorities we have cited, and there are other authorities which do not allow so extensive a meaning.

It results there is no error in the judgment of the court below, and it must be affirmed.